| 9 | 285 |
| 95 | 558 |

| 9 | 285 |
| 126 | 353 |

# JENNINGS & GRAHAM v. THE ADMINISTRATORS OF JENKINS, ET AL.

1. A purchaser of land at a sale made by commissioners, under the order of the Orphans' Court, cannot object to any irregularity in the action of the commissioners, if the sale is confirmed by the court.

2. Where G purchased land at a commissioner's sale, and executed his note with J as his surety, and J afterwards, with the consent of G, procured the commissioners to cancel the sale, executed his own notes, with security, as the purchaser of the land, and was returned as the purchaser to the court, by which it was confirmed—Held, that he could not afterwards rescind the sale, on the ground that the power of the commissioners was exhausted by the first sale.

3. The Orphans' Court has power to order the sale of an equitable title to real estate, in all cases where it may order a sale of land.

4. When commissioners are authorized by the Orphans' Court to sell land, and make sale of it in that capacity, and executed their individual bonds with condition to make title when the purchase money is paid, the execution of such a bond, is a collateral matter, which is binding, if at all, upon them individually. It is therefore no defence in an action upon the notes given for the purchase money, that upon a tender of the money, they refused to make a title.

5. When land is sold by order of the Orphans' Court, to make more equal distribution among the heirs, they are necessary parties to a bill filed to rescind the sale.

Error to the Chancery Court of Benton.

THE bill was filed by the plaintiffs in error, and alledges, that in April, 1841, the Orphans' Court of Benton, made an order for the sale of the real estate of Owen Jenkins, deceased, and appointed three persons commissioners to sell the same. In October, 1841, after notice, the commissioners sold the land to one Nimrod Ghent, who gave his notes for the purchase money, with the complainant Jennings and another, his sureties, the commissioners executing to Ghent, their bond, with condition to make him a title when the purchase money was paid. Some weeks after the sale, by an agreement among all the parties, the notes of Ghent, and the bond to him for title, were given up, and destroyed, and the notes of complainant, Jennings, with Graham and his sureties substituted in their stead; Jennings taking from the commissioners a bond for title, on payment of the purchase money. These papers were antedated, so as to correspond with the time of sale.

The commissioners then reported, that they had sold the land to Jennings, and had taken his notes for the purchase money, which was received by the court, and the commissioners directed to make him a title, on payment of the purchase money.

Upon these notes suit has been brought, and judgment recovered. The bill further alledges, that complainant tendered to the commissioners, and to the administrators, the amount of the judgment, and demanded title to the land,

which they failed to make, and he abandoned the land. It is also alledged, that at the time of the death of the deceased, no title had vested in him to forty acres of the land sold, and that none has vested in his heirs since; that the forty acres to which there is no legal title, was the principal inducement to the purchaser, and the residue is but of little value.

The answers substantially admit the facts stated in the bill, and alledge, in respect to the forty acres, to which title has not yet been obtained, that both in the advertisement, and at the sale, it was made known that the title was in one Mullins; and would be made to the purchaser when it was obtained from him. They also alledge that the title is undoubted, and will be shortly obtained.

Much testimony was taken, which, from the opinion of the court, it is unnecessary to set out.

The Chancellor, at the hearing, dismissed the bill, from which this writ is prosecuted. This is now assigned as error.

A. J. WALKER and WHITE, for plaintiffs in error. The authority under which the commissioners acted, is not set out, so as to show that the act was warranted by the power conferred. [6 Conn. 366.]

The commissioners do not undertake to convey such title as was vested in the deceased, but individually contract to make a fee simple title. This is their mere personal obligation, and is not binding on the estate. [10 Conn. 85.] A conveyance by the trustee individually, does not invest the title of the grantor. And as the commissioners had no title to the land, the notes were without consideration. There is no mutuality in the contract, as a court of equity would not enforce performance against the commissioners. [3 Ala. Rep. 40.]

Although the interest of the mortgagor in possession may be sold, (7 Ala. R. 855,) an equitable interest in lands cannot. [Clay's Dig. 225.]

The plaintiffs in error had the right to abandon the possession, and rescind the contract, upon failure of the commis-

sioners to make title, upon a tender of the purchase money. [1 Ala. R. 622; 5 Id. 604.]

The consent of Jennings to the substitution of his notes, for those of the original purchaser, can make no difference, because the contract is void.

The heirs are not necessary parties, because their interest was not affected, or divested by the sale. But if they were, the Chancellor should have permitted the bill to be amended. [5 Ala. R. 523.]

Conceding the first sale to be valid, by that act, their power was exhausted, and the succeeding pretended sale was a nullity. [6 Porter, 219; 7 Ala. R. 864; 2 How. U. S. 319.]

S. F. RICE and T. D. CLARKE, contra. By the act of Jennings, the commissioners returned to the court, that he was the purchaser of the land, and he cannot now be permitted to deny its validity, as the opposite party cannot be put in *statu quo.* [1 Story, 254; 7 Ala. R. 172, 855.]

The decree of the Orphans' Court is regular, and cannot be collaterally impeached. Nor could the case be altered, if the court had no jurisdiction, as the plaintiff went into possession under his purchase in 1841, and the bill was not filed until 1844. [7 Ala. R. 172, 855; 6 Porter, 219.]

The commissioners sold only such title as the deceased had. What that was, was well known to the plaintiff, and the fact that the commissioners agreed to make a title in fee, can exert no influence in this case, because the proof shows conclusively, that he was not thereby deceived.

But if, from the terms of their bond, the commissioners are compelled to make a good title, it is clear from the proof, that a good title can be made to the land.

ORMOND, J.—The object of the bill is, to rescind a sale made by order of the Orphans' Court. The principal argument urged, is, that the power conferred on the commissioners to sell the land, was a special authority, which must be exercised in strict conformity with the terms upon which the power is granted, and that by the first sale made to Ghent, their power was exhausted, and therefore the subsequent sale to Jennings, the plaintiff, is wholly void.

In general, there can be no doubt, that a power must be exercised in strict conformity with the authority by which it is authorized to be executed, and that even unessential forms must be strictly pursued, if required to be observed in its execution. This doctrine is fully illustrated by Lord Ellenborough, in the great case of Hawkins v. Kemp, 3 East, 410.

This rule does not apply to business of a public, or judicial nature. In such cases, a power entrusted to several, may be executed by the majority. [Commissioners of Alleghany County v. Licking, 6 S. & R. 166; Baltimore Turnpike, 5 Binn. 481; Downing v. Rugar, 21; Wendell, 178.] The sale of land by commissioners, acting under the order of the Orphans' Court, is not like the execution of a naked power, conferred by an individual. It is the act of the court, through the commissioners as its ministerial agents, over whose acts it retains a controlling power. It is not concluded by their action, but may, in its discretion, set aside the sale when made, and direct another. [Perkins v. Winter, 7 Ala. Rep. 871.] It follows, that the test of the correctness of such sales is not the action of the commissioners, but the ratification of the sale by the court. With the propriety of the action of the commissioners, so far as it respects the regularity of their proceedings, the purchaser has no concern. It is with their principal, the court, he is dealing, and if the court is satisfied, he has no cause of complaint, as he gets the land he purchased, upon the terms he offered.

This is the strictly legal view of the subject. In a court of equity, other considerations enter into the decision. That court will not only consider the consequences to the other party, but will also estimate the conduct of the party seeking relief, in producing the result complained of. This sale, if it be conceded to be irregular, was made at the instance of the complainant, who procured the previous sale to be vacated, and the notes which had been taken to be destroyed. The object of the bill is to invalidate this sale. We know of no rule of equity which would authorize this to be done. He cannot take advantage of his own wrong. By his procurement, the previous sale was set aside, and he returned as the purchaser, for the confirmation of the court, and the sale

being confirmed, he must abide the consequences of his own act.  It would be difficult to estimate the consequences to heirs, if such a defence could be allowed in such sales as the e. In this aspect, the case of Lamkin v. Reese, 7 Ala. Rep. 170, is infinitely stronger than this.  There it was held, that though the court had no jurisdiction to order a sale of the land, yet if the purchaser went into possession, he could not, after the lapse of two years, rescind the contract, if the heirs were then able and willing to make him a title.

The cases relied on by the counsel for the plaintiff in error, do not impair the view here taken.  The case of Lockwood v. Sturdevant, 6 Conn, 373, merely decides, that where administrators, by order of the probate court, sold and conveyed real estate, their authority to sell must appear on the deed of conveyance, otherwise the deed was void.  In Watson v. Watson, 10 Conn. 77, this is denied to be law, but it is admitted, that the legal necessity for the sale, must appear in the order of the court directing it.  It is obvious that in these cases, the question was entirely different from that here presented, as in this case no deed has been made.  Further, in these cases, the controversy was between the heir, and the purchaser, under the administrator's sale—and in that aspect, the question bears but little, if any resemblance to this.  We apprehend no case can be found, where the purchaser in possession, can disaffirm the sale, on account of an irregularity, when the heir is willing to affirm it.

The question as to the want of legal title, in the deceased to the land sold, came up in the case of Perkins v. Winter, 7 Ala. R. 866.  It was then held, that the Orphans' Court had power to direct the sale of the land of a deceased person, though the title was not complete.  That was, it is true, the case of a mortgagor in possession, but the principle there settled, applies fully to the sale of a mere equitable title.  It is to be observed. that the statute does not require, that there should be a legal title to authorize such sale, nor can such a requisition flow from the purpose, and evident design of the statute.  It is "real estate" which may be thus sold, the value of which is as capable of precise ascertainment, when it is an equitable, as when it is a legal estate.  The design of the statute being, to convert the land into money, to pay debts, in preference to selling slaves for that purpose; or for more

equal distribution among the heirs, where the land is not susceptible of just division into parts; and it would be in a great measure frustrated, if no sale could be made, but when a legal title existed to the land.

In this case, it appears the purchaser knew, when he purchased the land, that it was what is called "school land," and that the title was outstanding, waiting the payment by the original purchaser, of the purchase money; he could not therefore, in any case, defend himself on this ground against the payment of the purchase money, or rescind the contract. [Beck v. Simmons & Kornegay, 7 Ala. R. 71.]

We need not consider the evidence in regard to the tender, because it is not denied that the commissioners were willing to convey such title as the deceased had in the premises, which, as we have seen, was all the plaintiff in error was entitled to. His claim of right to rescind, is put upon the refusal to make him a title in fee. In reality, there appears to be no doubt, that the title is good, and in all probability is now complete.

The fact that the commissioners executed their own bond, covenanting to make title to the land, on payment of the purchase money, can have no influence whatever on this question. The sale was in fact made by them, as commissioners, under an order of the Orphans' Court; as individuals, they had no right to sell the land, nor is it pretended in the bill, they sold the land in any other way than as commissioners, and by virtue of the power conferred on them as such. Their individual bond for title was not necessary, nor could it have been demanded of them. Considered as a security, it is collateral to the sale, being the mere voluntary act of the commissioners. What effect it is entitled to, it will be time enough to consider, when an attempt is made to make them responsible upon it.

Although what has been said is decisive of this case, it is proper to remark, that the heirs of the deceased are necessary parties to such a bill as this. The sale of the land was made for the purpose of more equal distribution; the heirs are therefore the only real parties in interest, and no decree whatever could be made until they were before the court, as parties to the suit.

Decree affirmed.