# Pettus, Administrator, v. McClannahan, *pro ami.*

### Order vacating and annulling Sale of Decedent's Land.

1. *Judgment; what may be set aside at subsequent term.* — Void judgments may be set aside after the expiration of the term; but to authorize this, the invalidity of the judgment must appear on the face of the record, and not from matter *dehors* the record, except in cases of fraud, and where judgment was rendered after the death of a party.

2. *Sale of decedent's lands; when jurisdiction of probate court attaches.* — The jurisdiction of the probate court to order a sale of a decedent's lands for payment of debts is *in rem*, and attaches upon the filing of a petition containing the jurisdictional allegations.

3. *Presumption as to existence of jurisdictional fact.* — No presumption of the existence of the jurisdictional facts arises from the mere exercise of jurisdiction by a court of inferior or limited jurisdiction; yet when its record declares the ascertainment of such jurisdictional fact, its determination is conclusive until reversed on appeal.

4. *Same; as to sale of lands descended to minor.* — An order of sale of lands, descended to an infant or person of unsound mind, made without ascertaining the necessity, by proof of disinterested witnesses taken in deposition as in chancery cases, is void. But where the court has obtained jurisdiction by the filing of a proper petition, and its record recites that the court ascertained the necessity for a sale by proof of disinterested witnesses, taken by deposition as in chancery cases, errors in determining that the depositions were taken as in chancery cases, or that they proved the necessity for a sale, and the like, are mere errors and irregularities after jurisdiction attached, and cannot avoid the decree except on revision on appeal.

APPEAL from the Probate Court of Lauderdale.

On the hearing of the application of John D. McClannahan, a minor, by next friend, to vacate, annul, and set aside a sale of lands of the estate of James McClannahan, made under order of the probate court in the year 1860, the following facts were proved: —

1. On the 10th of December, 1860, W. W. Pettus, administrator of James McClannahan, filed in the probate court his sworn petition praying a sale of his intestate's lands, for the purpose of paying debts. The petition alleges the residence and death of the intestate in that county, his seisin of the lands situate in the county, which are particularly described, and the insufficiency of personalty to pay the debts. It also states that Elizabeth, the widow, who was entitled to dower, and James, an infant six years old, residing with his mother in said county, are the only heirs-at-law, or persons entitled to share in the estate. The widow consented in writing that all of the lands, except a certain portion reserved, should be sold freed from her claim of dower.

2. On the filing of the petition a day was properly set for the hearing, and a citation ordered to be served upon Elizabeth, the mother of James, ten days before the hearing. On the 27th of December the court made an order reciting that citation had been duly served upon said James, &c., appointing V.

| 52 | 55 |
| 95 | 479 |

| 52 | 55 |
| 99 | 470 |

| 52 | 55 |
| 101 | 340 |
| 101 | 541 |

| 52 | 55 |
| 105 | 470 |

| 52 | 55 |
| 107 | 354 |

| 52 | 55 |
| 113 | 161 |

| 52 | 55 |
| 116 | 652 |
| 117 | 462 |
| 117 | 466 |
| 117 | 467 |
| 117 | 536 |

| 52 | 55 |
| 123 | 418 |

| 52 | 55 |
| 128 | 651 |

| 52 | 55 |
| 137 | 625 |

M. Benham a suitable and fit person *guardian ad litem* for the minor, &c.

3. On the day set for the hearing, the court granted an order of sale of the lands. The decree, after reciting the filing of the petition for a sale for payment of debts, the setting of a day for the hearing, the due service of citation upon said James, the appointment of Benham as guardian *ad litem*, and his appearing and consenting to act, and filing a written answer denying the allegations of the petition, proceeds as follows: And it having been proved to the satisfaction of the court by the oaths of                who are disinterested witnesses, and whose testimony has been taken by deposition as in chancery cases, and which testimony has been filed or heard in this proceeding, that the personal property is insufficient to pay the debts of said estate, and that it is necessary and will be to the interest of said estate that said lands [here follows description of lands described in petition] should be sold for the purpose of paying debts according to the prayer of the petition. It is therefore ordered, &c. [here follows decree of sale]; and it is further ordered that said application and all the papers connected with this proceeding be recorded."

The administrator made the sales, now sought to be set aside, in accordance with the terms of the order, and they were duly reported to and confirmed by the court.

The bill of exceptions recites that "there is a paper in the file relating to said estate, containing interrogatories to Thomas N. Williams and J. W. Briggs, in regard to a necessity for the sale, and answers written to and under each of the interrogatories except the last one, and the paper is signed Thos. N. Williams, J. W. Briggs, W. W. Pettus, administrator; and that paper forms part of the final record of the case, and the paper and the final record of it constitute the only attempt at proof of necessity for such sale. It does not appear that the interrogatories were filed and notice thereof given to the guardian *ad litem*, nor does it appear that he waived notice, or that he crossed the interrogatories, or consented to the examination of the witnesses. It does not appear that any commission issued to take the deposition of the witnesses upon the interrogatories, nor does it appear that any such deposition was taken, nor that the witnesses were sworn, there being neither oath nor certificate of commissioner attached to or otherwise connected with said interrogatories and answers."

The administrator and others, purchasers at the sales, and claiming, as the petition states, to be owners of portions of the land, were made defendants to the petition, which alleges that the sales "were void for nonconformity to the act of February 7th, 1854, in this: that the petitioner then, and still, a minor,

[Pettus, Administrator, v. McClannahan.]

was interested in the lands, and proof was not taken as in chancery cases to show the necessity for the sale." This petition was filed some time in the year 1873, and the 3d day of October, 1873, set for the hearing.

The defendants demurred to the petition, and also moved to dismiss, and pleaded the order of sale of December, 1860, in bar of the relief sought. The court overruled the demurrer and motion to dismiss, holding that the order of sale did not conform to the statute, and accordingly made a decree vacating. and annulling the order of sale and sale under it. The various rulings of the court and the decree vacating the order of sale, and sales under it, are now assigned as error.

O'NEAL & O'NEAL for appellant. — The petition, reciting all that the statutes require, called the jurisdiction of the probate court into existence, and the jurisdiction thus arising, the same presumption that it was rightly exercised prevails as in reference to courts of superior and general authority. *Comstock* v. *Crawford*, 3 Wallace, 396; *Florentine* v. *Boston*, 2 Wallace, 215. The " necessity for sale " was the jurisdictional fact, and it was for the probate court to decide the existence of that fact, and the exercise of this jurisdiction warrants the presumption that the necessity was proved. *Grignon's Lessees* v. *Astor*, 2 Howard, 319, and authorities supra; 44 Ala. 312; 29 Ala. 510. Mere errors and irregularities, after the court has obtained jurisdiction, do not render the sale void. 47 Ala. 361, and cases cited. This being the case, the order of sale cannot be collaterally assailed.

KEYES & JONES, *contra.* — The record fails to show that proof was taken by deposition as in chancery cases. The decree shows only that on the " *oaths* " of disinterested witnesses a necessity for sale was shown, &c. It does not name the witnesses. The paper found in the final record shows that no deposition was taken, no commission issued, no cross-interrogatories filed, no witnesses sworn, and the like. The whole proceeding was in plain violation of the 5th section of the act of February 7th, 1854, and is void, and being void the court could set it aside at any time.

BRICKELL, C. J. — If a judgment or decree is not void for want of jurisdiction, the court rendering it, whether it is a court of superior or inferior, of general or limited jurisdiction, has not power, at a term subsequent to its rendition, to vacate or alter it. The correction of clerical misprisions is the extent of the power the court can subsequently exercise. *Johnson* v. *Glasscock*, 2 Ala. 522; 2 Brick. Dig. 141, § 150. The rule

rests upon the clear and intelligible principle, that the interests of society demand there should be a termination to each controversy ; or, as it is expressed in the familiar maxim, " *Interest reipublicæ ut sit finis litium.*" There would be but little value attached to judicial proceedings ; but little quiet to titles ; but little repose in society, if a court had power, after deliberating upon causes, ascertaining and declaring the rights of parties, after its adjudications had passed out of the " breasts of the judges," to reopen and redetermine the controversy. As is said by a recent writer : " If a vacillating, irresolute judge were allowed to thus keep causes ever within his power, to determine and redetermine them, term after term, to bandy his judgments about from one party to the other, and to change his conclusions as freely and as capriciously as a chameleon may change its hues, then litigation might become more intolerable than the wrongs it is intended to redress." Freeman on Judgments, 596. The judgment or decree may be erroneous ; it may abound with irregularities ; the power to revise and correct does not lie within the jurisdiction of the court rendering it. The jurisdiction of that court was exhausted when the judgment or decree was rendered. As an incident to that jurisdiction, if mere clerical misprisions have intervened, and the record affords the means of correction, it is the duty of the court, whenever required by a party in interest, to make the correction.

When, however, a court has rendered a judgment or decree void on its face, a due regard to its own dignity, the protection of its own officers, and the preservation of the judgments it may rightfully render, demands that it should on a proper application vacate such judgment or decree at any time subsequent to its rendition. If fraud is not imputed, the invalidity of the judgment must be apparent on the face of the record, and must not depend on matter extrinsic to, or *dehors* the record, except in the event of the death of either party, on whom the judgment or decree is to operate, when it was rendered. 2 Brick. Dig. 140, §§ 137, 140.

The inquiry propounded by the application of the appellee is, had the court of probate jurisdiction to render the decree for the sale of the lands of his ancestor ? As is said by Chief Justice WALKER, in *Satcher* v. *Satcher* (41 Ala. 39), it is beyond the pale of controversy in this court that the proceeding before the probate court, for the sale of the lands of the decedent, is *in rem ;* that the jurisdiction of the court attaches, upon a petition setting forth a statutory ground of sale ; and that the order of sale is not void, although the proceedings may abound in errors, if the petition contains the jurisdictional allegation. We do not understand the appellee as controverting this principle,

[Pettus, Administrator, v. McClannahan.]

or as assailing the petition for sale, as insufficient to call into exercise the jurisdiction of the court. The specific ground on which a vacation of the order of sale is prayed is, that proof of the allegation of the necessity of sale — the jurisdictional allegation — was not taken by deposition as in chancery cases. Prior to the statute of February 7, 1854, which now forms §§ 2224–5 of the Code, the absence of such proof, though expressly required, was an irregularity not affecting the validity of the decree of sale when collaterally assailed. The jurisdiction having attached on the filing of the petition, the omission to take the proof of the fact by deposition as in chancery proceedings was an error, an irregularity occurring in the exercise of the jurisdiction. *Field* v. *Goldsby*, 28 Ala. 218; *Satcher* v. *Satcher, supra*. The effect of the statute of 1854 is, when the proceeding is for the sale of lands descended to an infant, or person of unsound mind, to convert this error or irregularity into a defect which vitiates the decree of sale, as absolutely as an excess or usurpation of jurisdiction.

The record of the order of sale, granted by the court of probate, affirms that the jurisdictional allegation, the insufficiency of the personal assets for the payment of debts, and the necessity to sell the lands for the payment thereof, were shown to the satisfaction of the court, by deposition taken as in chancery cases. True, the record does not disclose the names of the witnesses whose depositions were taken, and a blank space is left, probably for the subsequent insertion of the names; yet, there is the distinct affirmation that the depositions of disinterested witnesses were taken as in chancery cases, and proved the jurisdictional fact to the satisfaction of the court.

It is a recognized principle, which this court has frequently been required to announce and to apply, that if a court of limited jurisdiction — and the court of probate, in the exercise of its statutory authority to sell the lands of a decedent, is a court of limited jurisdiction — is charged with the ascertainment of a jurisdictional fact, and its proceedings show the fact was ascertained, they cannot be collaterally impeached. *Wyatt* v. *Rambo*, 29 Ala. 510; *Hamner* v. *Mason*, 24 Ala. 480; *Reynolds* v. *Kirkland*, 44 Ala. 312. Herein lies a distinction between courts of general and courts of limited jurisdiction. " Nothing is intended to be without the jurisdiction of a supreme court (or a court of general jurisdiction), but that which specially appears to be so; and on the contrary, nothing is intended to be within the jurisdiction of an inferior (or court of limited jurisdiction), but that which is so expressly alleged." *Commissioners of Talladega* v. *Thompson*, 18 Ala. 694. From the mere exercise of jurisdiction, by a court of general or superior jurisdiction, the existence of the jurisdictional facts is in-

[Pettus, Administrator, v. McClannahan.]

ferred, unless the record discloses the contrary. From the exercise of jurisdiction, by a court of inferior or limited jurisdiction, the existence of jurisdictional facts is not inferred; they must affirmatively appear on the record. When the record of such a court discloses that the fact on which the jurisdiction depends has been ascertained by the court, the determination is *res adjudicata*, and cannot be questioned. The record imports, then, absolute, uncontrollable verity, and possesses undoubted validity and efficacy. The case of *Hamner* v. *Mason*, *supra*, is a striking illustration of this principle. The former orphans' court had jurisdiction to discharge the sureties of a guardian, on their application, and on the taking of a new bond with sureties. The taking of a new bond was the fact on which the jurisdiction to discharge the sureties depended. This fact must have appeared of record, to give validity to the discharge. The sureties of a guardian of several infants, who had given a single and joint bond, applied for an order requiring the guardian to give a new bond and new sureties, and for their discharge from further liability. A decree was subsequently rendered by the court, reciting the fact that the new bond was given with sureties approved by the court, and discharging the former sureties from further liability. From the new bond the name of one of the infants was entirely omitted, so that in point of fact it was not a security to him, and not a protection to his estate; yet this court declared the recital in the decree, that a new bond had been taken, was conclusive, incapable of impeachment or contradiction. The court say : " Where the fact upon which the power to act depends is referred by the law-maker to be determined by the court or officer, the determination of the fact by such court or officer is *res adjudicata*, and cannot be questioned. The question whether a new bond had been given was referred to the court, and was determined by it. This fact appears affirmatively from the record, and the recital is not traversable." When lands have descended to an infant or person of unsound mind, the statute of 1854 requires, if the court of probate orders such lands to be sold, on the application of the personal representative of the ancestor, that proof of the necessity of sale must be made by deposition taken as in chancery proceedings. On the court is devolved the duty of determining whether the proof is thus made. The court alone examines the mode in which the proof is taken. Its determination of necessity is *res adjudicata*. If it errs in its judgment, it is, like any other error into which the court may fall, the subject of revision and correction by an appellate tribunal. Until reversed, the judgment is conclusive, the law attaches to it undisputed and undisputable faith and credit. If this be not so, then at once the inquiry arises, What

[Pettus, Administrator, *v.* McClannahan.]

character or degree of error will vitiate the decree? Will the mere failure to nominate the commissioner, specifying his place of residence, as is requisite in the taking of depositions in chancery, vitiate the decree? Will the mere failure to state the residence of the witnesses work the destruction of a judicial proceeding which has become the foundation of titles to property? Will a mere departure from the essentials of the commissioner's certificate, which is cured if not made the subject of a specific objection before entering on the hearing in chancery, render the decree void? Is it not apparent that when the court declares the depositions have been taken as in chancery proceedings, the fact is conclusively ascertained, and judicially determined, not the subject of any other evidence, when the decree is collaterally assailed? Every defect the probate court, in its judgment vacating the order of sale, imputes to the depositions taken, may or may not exist. If they exist, they were the subject of objection and of determination when the order of sale was made. The court then determined the depositions were taken as in chancery proceedings. At no subsequent term could the court revise and reverse that determination. That lay within the jurisdiction of this court, and the lapse of time would have precluded this court from exercising the jurisdiction, when this application to vacate the sale was made and determined. In *Carter* v. *Waugh* (42 Ala. 452), which was an application of the character we are considering, the vacation of the decree of sale was sought on this among other grounds: "that the proof by deposition was not regularly or validly taken and returned." The record did not disclose, except by implication, and not by positive affirmation as in this case, that the proof of the necessity of sale had been taken by deposition as in chancery cases. The depositions found in the record were certainly irregularly taken, and did not appear to have been taken and certified by the commissioner. The court say: "It is true that the depositions appear upon their face to have been irregularly and imperfectly taken and returned to the court of probate, but this does not render the order of sale void. Besides, the order of sale judicially ascertains every matter necessary to show their regularity as against an attack of the kind made in this case." And so the record in this case judicially ascertains that every fact on which the jurisdiction of the court depended existed, and so declaring, the facts are not now open to further controversy.

The decree of the court of probate is reversed, and a decree here rendered dismissing the application of the appellee, at the costs of his next friend, in this court, and the court of probate.