[Bland *v.* Bowie.]

# Bland *et. al. v.* Bowie, Administrator.

*Action on Promissory Note given for Purchase of Decedent's Lands.*

1. *Decedent's lands; sale of, when void.*—Under the act of February 7th 1854 (now ? ? 2224, 2225, R. C.) where lands descended or devised to infants or persons of unsound minds, are ordered to be sold by the probate court, its failure to ascertain the necessity for the sale by depositions, taken as in chancery proceedings, renders the sale void.

2. *Same; when decree of sale not void.*—Where the court has obtained jurisdiction by the filing of a proper petition by a proper party, containing the jurisdictional allegations, and its record recites the ascertainment of the necessity for a sale by proof taken by depositions, as in chancery proceedings, errors of the court in determining that the depositions were taken as to chancery proceedings, or that they proved the *necessity* for the sale, and the like, are mere errors and irregularities after jurisdiction attached, which will not avoid the decree, except on direct attack on appeal.

3. *Same; what may be looked to, to sustain a decree of sale.*—Where the decree of sale recites that proof was made by certain witnesses, "taken by depositions as in chancery proceedings, which testimony has been filed of record in this proceeding," the testimony thus identified and referred to becomes a part of the record; and if it be doubtful from the recitals in the decree what the witnesses proved, such testimony must be looked to, to ascertain whether the necessity for a sale was proved.

4. *Same; validity of order made during late war.*—An order of sale made on a proper petition by the probate court in 1863, is valid, and a *revivor* of it by the court three years afterwards is unnecessary to authorize a sale under it, where circumstances, such as existed during the late war, made a sale before that time inexpedient.

5. *Sale; decree for, under control of court until confirmation.*—Until the sale is confirmed it is incomplete and fully under the control of the court and confers no rights. If any injury has resulted from the lapse of time between the rendition of the decree and the sale under it, the court in the exercise of a sound discretion would refuse to confirm it. Lapse of time between the rendition of the decree and the sale under it can not prejudice the purchaser, and he can not be heard to complain of it.

6. *Decree; when may be vacated at subsequent term.*—All courts of record, whether of general or limited jurisdiction, may at any subsequent term vacate an order or decree void on its face, but not for matter *dehors* the record except in cases of fraud, and the death of a party before rendition of the decree.

7. *Same; who must have notice of.*—Where a sale of lands, for distribution, regularly made under order of the probate court and duly confirmed by it, is sought to be vacated at a subsequent term, at the instance of the purchaser, the court has no jurisdiction to vacate the decree of sale, unless proper notice has been given the heirs and devisees.

8. *Sale of lands of decedent; what principle applicable to.*—Sales of land of decedents made under order of the probate court are judicial sales, to which the maxim *caveat emptor* applies in all its vigor.

9. *Same; who can not move to set aside.*—The purchaser is not a party to such a decree, and has no right to move to have the decree of sale set aside.

10. *Same; when irregularity of proceedings no defence to action for purchase money.*—Where a sale is made under order of the probate court and the purchaser complies with the terms and it is duly confirmed, if the record

Vol. LIII.

of the sale does not affirmatively show that the decedent has no interest in the land descendible to his heirs and vendible under the decree, the purchaser can not defend against an action for the purchase money, on account of the irregularity of the proceedings for the sale, or even its utter invalidity.

11. *Same; to what relief purchaser may be entitled in such a case.*—The purchaser, at any time after he discovers that the proceedings are void, may resort to a court of equity to compel the heir or devisee to elect a ratification or recission of the contract of purchase money. If the purchase money has been paid and distributed, to the heirs, or applied to the payment of debts, equity will compel a conveyance from the heirs, if they could not successfully impeach the fairness of the sale.

APPEAL from Circuit Court of Dallas.

TRIED before Hon. M. J. SAFFOLD.

Appellee, M. L. Bowie, as administrator *de bonis non,* &c., of the estate of John P. Boyd, deceased, brought this action on the 29th day of January 1873, on a promissory note made by Elza Bland and others, the appellants, for a part of the purchase money of a tract of land sold by W. H. Griffin, as the administrator of John P. Boyd, deceased, under an order of the probate court of Dallas county.

A trial was had, on written agreement of counsel, "on the general issue, with leave to give in evidence any matter which could be pleaded or replied—embracing any matter which occurred, before or after the suit commenced."

It appears from the bill of exceptions that the plaintiff read the note sued on and rested, and the evidence tended to show that the note sued on was executed by the defendants, as a part of the purchase money of a tract of land in Dallas county which was sold by W. H. Griffin, as administrator, of John P. Boyd, deceased, on the 3d day of December, 1866, on the premises at White's Bluff. At that sale Elza Bland and John J. Olds became the purchasers of the land, and Bland paid the administrator $100 in cash, and the purchasers gave the note sued on and another note for the same amount, with the same sureties for the balance of the purchase money.

The evidence showed that John P. Boyd died in 1859, and was at the time of his death the owner of said lands. That said Boyd left a widow and six children, his only heirs at law. The children were then minors. Boyd left a will which was probated in July 1859, and letters testamentory issued to his widow, Sally Boyd. By the will the testator, after providing for his debts, gave all of his estate real and personal to his wife, during widowhood, with remainder to his six children. The widow died in 1861, and the children then removed to Virginia. In December 1861 Wade H.

Griffin was appointed administrator *de bonis non*, with the will annexed.

On the 2d of July 1863, Griffin, as administrator, filed a regular petition for an order to sell ·said lands, for division among the heirs at law of Boyd, on the ground that the lands could not be equitably divided between the heirs, This petition names the heirs and states that two were of age and four were minors, and all resided in Virginia. The court then appointed a guardian *ad litem* for the minors; and fixed the second Monday in August, which was the 10th day, for the hearing, and ordered publication of notice. On the 10th day of August 1863, the probate court made the following order of sale:

*In the matter of the estate of John P. Boyd. deceased.*

"This being the day regularly appointed to hear and determine the petition of Wade H. Griffin, as administrator of said estate, for an order to sell certain lands therein described, for the purpose of division among the heirs, and that the same cannot be equitably divided among the heirs without sale. Now comes the said administrator and moves the court that said application be granted, and also comes J. B. Joyner, who is next of kin to said administrator, and who was heretofore duly appointed and has consented to act as *guardian ad litem* to represent the interest of the minor children—to-wit: Martha J. Boyd, Alwilda Boyd, Earl Boyd, and John P. Boyd, and it appearing to the satisfaction of the court that notice by publication in the 'Reporter,' a newspaper published in the city of Selma, had been given for more than forty days previously, in all respects strictly according to the order of this court made and entered in the premises on the 2d day of July 1863, as is now shown to this court by due proof, and it having been proven to the satisfaction of the court by the oaths of Jas. W. Kelly and James M. Lenoir, who are disinterested witnesses, and whose testimony has been taken by deposition as in chancery cases and which testimony has been filed of record in this proceeding.

"It is therefore ordered, adjudged, and decreed that said application be granted, and said administrator is hereby ordered to sell the aforesaid described lands, at public out-cry, in    manner    and    form    as    the    law    directs    in    such cases, after first giving notice for three successive weeks of the time, place and terms of the sale, together with the description of the property in the 'Selma Reporter,' a newspaper published in the county of Dallas, upon the following terms, to-wit: on a credit of one and two years, with inter-

est from date, secured by note with two good and sufficient securities."

The depositions of Kelly and Lenoir, were a part of the evidence offered. In their answers, to the interrogatory, whether or not the lands could be equitably divided among the heirs, they state, that they "do not believe the land could be equitably divided among the heirs without a sale," and this was the only proof of the necessity for sale so far as appears in the record.

The land not having been sold, it seems that another order of sale was applied for.

A minute entry of Oct. 12th 1866, recites, that on that day Griffin, administrator, with the will annexed, filed a written petition under oath, setting forth the former order of sale obtained by him, "which for certain reasons set forth in the petition has never been executed," and praying that the "former order be revived and he be allowed to proceed with said sale," wherefore it was "ordered, adjudged and decreed that said application be granted, and said administrator is hereby ordered to sell the lands described in said former order, at public out-cry in manner and form as the law directs in such cases, after having first given notice for at least three successive weeks of the time, place, and terms of the sale, together with the description of the property in a newspaper published in the county, said sale to be made upon the following terms, viz : $100 cash, balance in one and two years, secured by note with approved security."

On the 18th day of January 1867, Griffin reported in writing under oath that on the 3d day of December 1866, within the legal hours of sale, he had made a sale of the lands to certain persons, &c., in strict accordance "with all the requirements of the former order and decree of the court granted and entered in the premises on the 12th day of October, 1866. At this sale appellants were the purchasers, and it was duly confirmed by the court..

On the 24th day of February 1869, M. L. Bowie was appointed administrator *de bonis non*, of John P. Boyd, in place of Wade H. Griffin, removed.

On the 18th day of March, 1869, Elza Bland filed in the probate court a petition to set aside the orders of sale aforesaid, and the sale made under them—on the grounds that the court had no jurisdiction to order the sale.

The court set a day for the hearing of Bland's petition and ordered notice to be given to M. L. Bowie administrator.

This petition of Bland's, after being continued once or

[Bland v. Bowie.]

twice, was tried on the 2d day of April 1869. Bowie, as administrator of Boyd, appeared in person and by his attorney, and contested the petition. The court, on that trial, found from the record that the order for the sale of said lands, made on the 10th day of August 1863, was made without any proof of the necessity for the sale of said lands as required by the statutes" and that it was otherwise illegal and void; and the court found, from the record, that the order of sale made "on the 12th day of October 1866, and under which said lands were sold,     *     *     was made on the day on which it was asked for by the administrator,     *     * and no evidence was offered or taken, either by depositions or otherwise, to show the necessity for the sale of said lands or to show any other facts." The court also found that when the orders were granted and at that time, there were minors, heirs of John P. Boyd, interested in the lands. And the court decreed that the orders for the sale and the sale made were void; and set aside and vacated the orders and the sale, and declared them null and void. This decree is still unreversed.

The evidence showed that at the time of the trial, John P Boyd, Jr. one of the sons of John P. Boyd, was still a minor.

The evidence further shows that J. J. Olds, one of the purchasers, failed to comply with his part of the contract, and that Bland, the other purchaser, took possession on the first day of January 1867. As soon as the sale was set aside Bland offered in person and by his attorney to surrender this land to Bowie, as administrator of John P. Boyd, but he refused to accept the possession. The plaintiff on the trial admitted that from the 3d day of April 1869, continuously to the 20th day of September 1871, Elza Bland, in good faith, tendered the possession of the land to M. L. Bowie as administrator of Boyd, and on the 20th of September 1871, said Bland abandoned the possession of the land and gave notice thereof to the plaintiff; and that after the 20th of September 1871, neither Bland, nor Olds, nor any one claiming under either of them has had possession of any part of said land.

The court, at the request of plaintiff, charged the jury in substance if they believed the evidence they must find for the plaintiff, and defendants duly excepted. The defendants asked several charges, to the refusal of which they reserved exceptions, as well as to other rulings on the trial, which it is unnecessary to notice further.

PETTUS, DAWSON, & TILLMAN for appellants.

[Bland v. Bowie.]
Brooks, Haralson & Roy, contra.

BRICKELL, C. J.—Since the decision in Wyman v. Campbell, 6 Port. 219, it has been the uniform course of decision in this court, that a proceeding in the court of probate, for the sale of the lands of a decedent, is in rem against the land, and not in personam, against the heir or devisee. Jurisdiction of the thing, not of the person, is the element imparting validity to the proceeding. The jurisdiction is put in full exercise, when a petition is filed in the proper court, by a proper party, disclosing any of the grounds of sale expressed in the statute. See authorities collected in 1 Brick. Dig. 939, § 352–3; Wright v. Ware, 51 Ala.; Pettus v. McClanahan, 52 Ala. 55. The decisions also, are uniform, that where the jurisdiction of the court has attached a decree of sale, however erroneous and irregular it may be, or the proceedings on which it is founded, cannot be collaterally assailed. Until it is questioned and reversed on error, it is conclusive, though abounding with irregularity. 1 Birch Dig. 939, § 355. The failure of the court to give the notice required by the statute—or to appoint a guardian ad litem or to take proof by deposition of the existence of the facts authorizing sale, were irregularities occurring after the jurisdiction had attached, and in its exercise, and of consequence did not affect the validity of the decree, when drawn in question collaterally, though cause of reversal on appeal to a higher tribunal. 1 Brick. Dig. 941, § 385–6–7. The act of February 7, 1854, now forming §§ 2224–5, of the Revised Code, operates a change of the law as settled by the decisions of this court, to this extent only—if there are infants or persons of unsound mind, interested as heirs or devisees in the lands sought to be sold, the court must take proof by deposition as in chancery proceedings, showing the necessity of sale, or the order of sale is void. Satcher v. Satcher, 41 Ala. 26. Thus converting an error or irregularity, which must occur, if it occurs at all after jurisdiction has attached, and in its exercise, into a defect, equal in its consequences to a usurpation of jurisdiction.

The court of probate has jurisdiction to order or decree the sale of lands of a decedent, on whose estate it has granted administration, or of whose will it has taken probate, "when the same cannot be equitably divided amongst the heirs or devisees." R. C. § 2221. The application to the court for the order of sale, must be made by the executor or administrator—it must state the ground or necessity of sale—that is, that the lands cannot be equitably divided amongst the

[Bland *v.* Bowie.]

heirs, if they have descended to heirs, or the devisers, if they have been devised; must describe the lands accurately; must state the names of the heirs or devisees, and their places of residence, and which of them, if any, are married women, or infants, or of unsound mind. R. C. § 2222. The petition on which the decree of sale impeached by the appellants was founded, conforms in all respects to the requirements of the statute. Every fact on which a decree of sale could be rendered, is distinctly alleged. It was received and acted on by the court, and the decree of sale recites : "and it having been proven to the satisfaction of the court by the oaths of James W. Kelly, and James A. Lenoir, who are disinterested witnesses, and whose testimony has been taken by deposition, as in chancery cases, and which testimony has been filed of record in this proceeding. It is therefore ordered," &c. It will be observed the decree does not declare or recite what was proven by the depositions—whether they proved that the lands could not be equitably divided amongst the heirs or devisees, and thus proved the ground or necessity of sale alleged in the petition, or some other fact. But it is declared that the depositions are filed of record in the proceeding. Such a reference to a paper filed in a cause, and which would not of itself be properly a part of the record, will make it a part of the record, and require that the record should be read as if it was incorporated into it by an express recital of its contents. This has been frequently affirmed in this court in reference to the answer of a garnishee, which may be oral or written. It is not part of the record unless made so by bill of exceptions or recital in the judgment entry. *Gaines* v. *Beirne,* 3 Ala. 114; *Saunders* v. *Camp,* 6 Ala. 73; *Bostrick* v. *Beach,* 18 Ala. 80. If, however, the judgment entry refers to, and identifies an answer in writing as filed, it is considered as part of the record. *Jones* v. *Howell,* 16 Ala. 695; *Price* v. *Thomason,* 11 Ala. 875; *Falconer* v. *Head,* 31 Ala. 513. These depositions thus referred to and identified by the decree of sale, must be looked to in determining whether the necessity of sale was proved. They certainly prove that in the opinion of the witnesses who knew the lands, an equitable division could not be made without a sale. It may be the evidence is subject to objection because it is a mere expression of opinion, unaccompanied by facts supporting it, or from which the court could deduce a conclusion as to its correctness. The admissibility and sufficiency of the evidence, was a matter for the adjudication of the court of probate, subject to revision on appeal by a higher tribunal. The court adjudica-

Vol. liii.

ted the matter, and when collaterally assailed, the adjudication is conclusive. No court can assume, except an appellate court, on error or appeal, to annul, or deny validity to the judgment or decree of a court of competent jurisdiction, because it is supposed to be founded on defective pleading, or insufficient evidence. All questions of pleading, and of the admissibility or sufficiency of evidence, are involved in, and concluded by the judgment or decree. When minors or persons of unsound mind are the heirs to whom lands have descended or been devised, by force of the statute, a decree of sale is void, unless the ground or necessity of sale is proved by depositions taken as in chancery proceedings. On the court of probate is devolved the duty of determining whether the depositions have been so taken. If its record does not disclose that they were so taken, the decree of sale is void. If the record discloses that the court adjudged they were so taken, however palpable may be the error of the adjudication, it is final and conclusive, supporting the decree of sale, except when questioned on error or appeal in a proceeding for its reversal. *King* v. *Kent*, 29 Ala. 542; *Hamner* v. *Mason*, 24 Ala. 480; *Wright* v. *Ware, supra; Pettus* v. *McClanahan, supra.* The decree of sale made by the court of probate in 1863 is valid, authorizing a sale by the administrator of the lands described.

A sale not having been made under this decree, in 1866, the administrator applied to the court of probate for an order reviving the decree, and that he be allowed to proceed with the sale. The court made an order directing the administrator to proceed to sell the lands under the former decree. A sale was then made, at which two of the appellants became the purchasers, complied with the terms of sale, and it was reported to and confirmed by the court of probate. This order of revivor was wholly unnecessary, and if not a mere nullity does not impair the force and effect of the former decree. The statutes do not prescribe any time within which a decree of sale rendered by the court of probate shall be executed. In chancery no question can ever arise as to whether a decree of sale loses its energy because of the lapse of time intervening between its rendition and execution. The decree is interlocutory, and is kept alive by the continuance of the cause. A sale under a decree of the court of probate is a judicial sale. The court is in legal effect the vendor. *Hutton* v. *Williams*, 35 Ala. 503; *Wallace* v. *Hall*, 19 Ala. 367; *Jennings* v. *Jenkins*, 9 Ala. 289; *Perkins* v. *Winter*, 7 Ala. 855. Until confirmed by the court it is not complete, and confers no rights. Rorer on Judicial Sales,

[Bland v. Bowie.]

55. Its confirmation rests in the sound discretion of the court, and if any injury could result from the lapse of time between the rendition of the decree and its execution, the court would not confirm, but would vacate the sale. The circumstances existing during the interval between the rendition of this decree and the sale made, of which all courts take judicial notice, were such that an administrator jealous of the interests committed to his trust, would have felt justified in deferring a sale to be had for distribution only. The sale was reported to, and confirmed by the court of probate, and the confirmation entitles the purchaser to a conveyance of title, on the payment of the purchase money. The jurisdiction of the court to confirm was plenary, and no injury can result to the purchaser from the delay in executing the order of sale. He cannot, therefore, be heard to complain of it.

It is well settled on authority that the court of probate, or any other court of record, whether of general or limited jurisdiction, may, on a proper application, vacate any final order or decree, void on its face, at any time subsequent to its rendition; but not for matters *dehors* the record, except in the event of the death of either party, when the order was made, or the judgment or decree rendered. If the judgment is not void on its face, and both parties were living at its rendition, the court cannot at a subsequent term vacate or alter it. The correction of clerical misprisions is then the extent of its authority. *Pettus* v. *McClanahan*, 52 Ala; 2 Brick. Dig. 140, §§ 137, 141, 150. The jurisdiction which the court exercises in vacating a judgment or decree, is *in personam*, and involves authority over the judgment, and the parties having interests in it. The first is inherent in the court, springing from its duty to make its records speak the truth, and to prevent them from being made the sources of litigation imperilling its officers and its suitors. The latter it must acquire from notice to the parties to be affected. *Lamar* v. *Commissioners' Court*, 21 Ala. 772. When the jurisdiction of a court is *in personam*, notice to the parties in interest is an indispensible element to support its exercise. *McClung* v. *Hooper*, 12 Ala. 823; *Eslava* v. *Le Petre*, 21 Ala. 504.

If it could be conceded that a purchaser of real estate, at a sale made under a decree of the court of probate, could invoke the exercise of the jurisdiction of the court, to vacate the decree of sale, the order vacating the sale, on which the appellant relies, is wanting in validity because made without notice to the heirs or devisees. They have not had an opportunity of being heard in support of the decree of sale, or

[Bland v. Bowie.]

of asserting their rights under it. Without notice to them the court had not jurisdiction to vacate the decree of sale. They alone had interests in the decree adverse to the purchaser. The decree of sale was rendered to effect a distribution to them, and the court could not without affording them the opportunity to be heard, touch the decree it had rendered. It appears the court ordered notice to be given such of the heirs or devisees as resided without the State by publication. The heirs or devisees are not named, nor is it stated which of them resided without the State, and were to be effected by such notice. It does not appear that this notice was given, and if it had been, we are not aware of any statute authorizing it. As to the heirs or devisees, the whole proceeding was *ex parte.* Nor can we regard the purchaser as having any right to invoke the exercise of this jurisdiction. He was not a party to the decree of sale, and can sustain no legal injury from its invalidity.

The decree of sale being valid, and the sale made on confirmation, conferring on the purchasers, all the rights for which they contracted, or to which they were entitled, an affirmance of the judgment necessarily follows. There is another point of view, fatal to the defense attempted by the appellants, on which it is proper to announce distinctly the opinion of the court. When a sale of lands is decreed by the court of probate, and is made, and the purchaser complies with its terms, and the sale is confirmed by the court, if the record of the proceedings for sale discloses that the decedent had an interest in the lands descendible to his heirs, and vendible under the decree; or rather does not affirmatively disclose a want of such interest, the purchaser cannot defend against an action for the purchase money, because of the irregularity of the proceedings for the sale, or because of their utter invalidity. We repeat the sale is a judicial sale—the court is in effect the vendor. The maxim *caveat emptor* applies in all its vigor. The purchaser has full opportunity of ascertaining what is sold, and by what authority. He must inquire at his peril. If with the opportunity of ascertaining the regularity or validity of the sale, he does not inquire, or inquires, and suffers the court without objection to proceed to a confirmation of the sale, he estops himself from asserting afterwards its irregularity or invalidity. After confirmation, the sale is so far complete that the heirs or devisees acquire an interest in its consummation. If the proceedings are void they may elect to confirm them, and by conveyance vest in the purchaser all the interest he could have acquired by proceedings strictly con-

11

[White *v.* King.]

forming to the law. Of this right the purchaser cannot be permitted to deprive them. We do not doubt that it is competent for the purchaser, at any time after he discovers that the proceedings for the sale are void, to resort to a court of equity to compel the heir or devisee to elect the ratification, or the rescission of the contract of purchase. If the purchase money has been paid and distributed to the heirs, or applied by the personal representative to the payment of debts, a court of equity would compel a conveyance of title from the heirs, if they could not successfully impeach the fairness of the sale. *Bell* v. *Craig,* 52 Ala. 215. It is impossible that injury can result to the vigilant purchaser, and it cannot be allowed him to rescind at pleasure the contract of purchase, which the heirs may be willing to confirm. This would be the consequence if he could in defense to an action for the purchase money, set up the invalidity of the sale. *Lamkin* v. *Reese,* 7 Ala. 170; *Jenkins* v. *Jennings,* 9 Ala. 285; *Worthington* v. *McRoberts, ib.* 297; *Burns* v. *Hamilton,* 33 Ala. 210; *Hickson* v. *Lingold,* 47 Ala. 450.

The undisputed facts of the case required the court to charge the jury, as it did, that the plaintiff was entitled to recover, and the judgment must be affirmed.