## I. L. WALKER v. LAWLER'S HEIRS.

1. In 1846 A and B, as attorneys for an administrator, rendered professional services in a suit involving his intestate's title to a league of land; in 1852, C, one of the heirs, conveyed, as sole owner, the league in controversy to D, who, in part consideration, assumed the payment of the fees due A and B, and executed a mortgage on the entire league to secure the payment of the purchase-money. D afterwards set aside three hundred and fifty acres of the land to A and B in payment for their services in the suit, and made a deed thereto. The vendee of A and B, in 1854, conveyed to W. Afterwards, at a sale on foreclosure of the mortgage to C by E, the administrator on his estate, the entire league was purchased by E as C's administrator. C, during his life, recognized the fact that the lands conveyed by him were incumbered by the lien for the fees due to A and B: *Held*, 1. In a suit for the land by E against W, that the above facts constituted a sufficient defense; that E could not repudiate the conveyance under which W claimed, without restoring the value of the services for which the conveyance under which W claimed the land was made, and that W was subrogated to the rights of the attorneys A and B. 2. The heir cannot treat the adjustment of a claim against the estate of his ancestor as a nullity, while he enjoys without offering to restore the benefit of it.

2. BONA FIDE PURCHASER—EQUITABLE LIEN.—When a *bona fide* possessor or purchaser of an estate pays money in discharge of an existing incumbrance or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner seeking to recover the estate from him.

3. LIMITATION.—Limitation will not begin to run against one who establishes an equity based on a conveyance to him by the vendee of an heir in adjustment of a claim against the estate with the heir's consent, when a suit to evict is afterwards brought by the representatives of the heir, until after some clear act repudiating the adjustment.

APPEAL from Guadalupe. Tried below before the Hon. J. P. Richardson.

The litigation involving title to the land sued for began in 1846. (See De Witt *v.* Miller, 9 Tex., 240.) The lull in the proceedings below in this suit for a period of ten years, referred to in the opinion, will perhaps be accounted for by the pendency of another suit during that period, prosecuted for the entire league by one of the heirs of the empresario, Green De Witt. (See 39 Tex., 676.) The opinion fully states the pleadings on which it is based.

*W. B. Leigh,* for appellant.—As early as the case of Howard *v.* North, 5 Tex., 315, this court gave the right of subrogation a very favorable consideration. In this case Chief Justice Hemphill says: "This principle of equity has been repeatedly recognized by the courts of chancery. It was a well-established rule under the Spanish system of jurisprudence, and its justice should commend its adoption and recognition in all codes and by all courts." He then quotes from Dufour *v.* Camfranc, 11 Mart., La., 610.

The proceedings in law will, by courts of equity, be treated as valid, though they may be erroneous. But equity will relieve against their consequences, because the rights thereby acquired cannot be retained in conscience. The purchaser will be treated as a trustee, and he will not be compelled to

surrender until equity was done him. (7 Monr., 615; 8 Dana, 183; 3 Id., 623.)

Again, this court recognized this principle in the case of Vandever v. Freeman, 20 Tex., 333. (See also Volli v. Fleming, 29 Mo., 152; Durham v. Rhodes, 23 Md., 233; Matterson v. Thomas, 41 Ill., 110; 5 Barb. 613; 4 Md. Ch. Decis., 310; 2 Binney, (Penn. R.,) 382; 9 Barr, 341; 8 La., 528; 3 La. Ann., 396; 9 Barr, 341.)

In this case both the plaintiffs and E. B. Miller claimed the land under Thos. R. Miller. His representatives, in the recovery of this property, had contracted a debt, which certainly had a preference over the rights of any legatee or heir. If, then, the property of the estate was subject, in the hands of the administrator or executor, to the payment of its debts and expenses of administration, then no one or more of these heirs or legatees could sell a portion or the whole of it, free from incumbrances, without first discharging these obligations of the estate. If E. B. Miller, then, be either an heir or legatee, he could acquire no lien, either by sale or otherwise, superior to that of the attorneys who recovered the land itself. Theirs was a preferred claim, even as against ordinary creditors. Morrison, believing he was acquiring a good and indefeasible title to the land, paid off and discharged this indebtedness of the estate of Thos. R. Miller, and was then undoubtedly subrogated to the rights of those for whom he paid the claim. If they had no rights, then he had none; but if they had rights, then the appellant is entitled to be subrogated to them.

[The name of no attorney is signed to the briefs furnished the reporters for appellee.]

GOULD, ASSOCIATE JUSTICE.—Originally, this was a suit for partition of a league of land, brought in 1858, by Lawler's heirs against appellant Walker, A. Herron, and others. In 1868, (and as to the history of the case during these ten years the record is silent,) Walker filed a cross-bill, making the ad-

ministrator of E. B. Miller a party, and, by agreement, in December, 1872, the case was tried as a suit for the recovery of the entire league of land, by Lawler's heirs and Harwood, administrator of E. B. Miller's estate, as plaintiffs, against Walker, as a defendant; the latter abandoning " all issues made in his pleadings, save and except the issue wherein it is sought to subrogate defendant to all the rights of his vendors as against the estates of Thomas R. Miller and E. B. Miller, upon which point the court sustained exceptions to defendant's pleadings, and he declining to amend, judgment was rendered in favor of appellees for the land in controversy.

Whether these exceptions were properly sustained, is the general question presented, and in order to its determination and to ascertain who were his vendors, and the nature of their rights, to which he claimed to be subrogated, it is necessary to state the substance of the pleadings of Walker.

Walker alleged the institution, in 1846, by Vanderlip and Anderson, attorneys, of a suit in favor of one Hawkins, administrator of T. R. Miller's estate, against one De Witt, for the league of land in controversy, and that it was prosecuted (Gordon taking the place of Anderson, who died) to a successful termination in the District Court in October, 1851, and was, on appeal, affirmed in this court in 1853. (See 9 Tex.) A written agreement between Hawkins and Vanderlip & Anderson was set out; but we are of the opinion that it had no reference to the suit brought by Vanderlip & Gordon, and that their right to compensation for their services was not founded on that contract. In May, 1852, it is alleged that E. B. Miller, stated to be sole owner of T. R. Miller's estate, conveyed by deed the entire estate, including the land, to one A. Herron, who, as part consideration, assumed payment of the fees due said attorneys, and who executed to Miller a mortgage on all the lands of the estate to secure his notes to Miller for the purchase-money; that on demand of Vanderlip for one tenth of the land or its value, " the said E. B. Miller having previously recognized their rights thereto,"

certain three hundred and fifty acres were valued at $2,214, and set aside as a reasonable fee, and, by direction of Vanderlip, a title bond, and afterwards a deed thereto, was made by Herron to Wesley Morrison, who, on January 2, 1854, conveyed to Walker. The death of E. B. Miller, and the administration on his estate by Harwood; the death of Herron, and the administration on his estate by G. E. L. Herron; the approval and allowance of the notes and mortgage against Herron's estate, and the procurement, by Harwood, from the County Court of an order of sale of the mortgaged land in November, 1863; a sale thereunder, in 1868, to Harwood, and conveyance to him, as administrator of E. B. Miller, are also alleged. The cross-bill further claims that if Walker's title to the land should fail, that he be subrogated to the rights of Vanderlip, Anderson, and Gordon, to whom his vendor, Morrison, paid, in consideration for the land, a legal and equitable claim against the estate of Thomas R. Miller, and prays that Harwood, as administrator and individually, be made a defendant; and that if he cannot hold the land, that he have judgment against the legatees of T. R. Miller, or their heirs as legatees, for $2,214, with interest, and for general relief. In an answer filed December 12, 1873, (most of which was an attack on the alleged will of T. R. Miller, under which Lawler's heirs claimed,) it was averred that E. B. Miller and Richard and Thomas Dabney Miller were next of kin and heirs of Thomas R. Miller. In an amended answer of same date, defendant asserts that the claim of Vanderlip, Anderson, and Gordon was for expenses of administration, and constituted a preferred claim and lien on the property of the estate; that E. B. Miller, in his deed to Herron, "recognized and confirmed the fact that the lands or parts of lands conveyed by said deed were encumbered by fees due and other charges of litigation; that therefore all parties claiming by, through, or under said E. B. Miller, were estopped from denying the existence of said charges and encumbrances." The exceptions of Harwood to Walker's pleadings, so far as it is

necessary to consider them, raise two questions: 1st. Are such facts stated as show that Vanderlip & Gordon held a claim which gave them an interest in the league of land, or constituted a charge upon it in the hands of E. B. Miller or his representatives? 2d. Does Walker show that he is entitled to the benefit of that claim?

As to the first point, without reference to the written agreement of Vanderlip and Anderson, the averments of the cross-bill and answers show that Vanderlip and Gordon rendered services to the estate of Thomas R. Miller which gave them a just claim against that estate in the hands of E. B. Miller, and which was recognized by the latter as such to the extent of ten per cent. of the value of the league of land recovered by their efforts. Because the debts of the deceased and the expenses of administration are charges against the estate in the hands of the heir, E. B. Miller and his vendor, Herron, held the property of the estate of T. R. Miller subject to that claim, when it was supposed to be adjusted by a conveyance by Herron of part of the encumbered estate for that purpose, and the claim was given up in consideration of the land so conveyed. 2d. In regard to the right of Walker to protect himself, under this claim, against any action of E. B. Miller or his representatives interfering with the adjustment, and claiming back the land conveyed in payment of the claim, we think the equities which support that right are strong and clear. Let us suppose that E. B. Miller, shortly after the adjustment, had brought suit on his mortgage against Herron, and had made parties of Vanderlip and Gordon and their vendors, Morrison and Walker, seeking to subject the land in their hands. It will not be questioned that in such a suit the claim of Vanderlip and Gordon could have been set up as against Miller as still unsettled, and as entitled to be first paid out of the proceeds of the foreclosure. Miller could not, at the same time treat the adjustment as a nullity and claim the benefit of it. If made with his assent, he had no right to disturb it. If made without his assent,

whilst it was allowed by him to remain undisturbed, the settlement inured to his benefit, and when he and his representatives see fit to repudiate it, they should restore the benefit received. The principle is the same which entitles a *bona fide* purchase at an execution or administration sale, held to be void, to be substituted to the rights of the execution or other creditor who received the proceeds to the extent of the purchase-money paid. (Howard *v.* North, 5 Tex., 116; Volli's Heirs *v.* Fleming's Heirs, 29 Missouri, 152; Springs *v.* Harren, 3 Jones' Eq., N. C., 95; Scott *v.* Dunn, 1 Dev. & Bat. Eq., 426.)

The principle is the same said by Justice Story to be a broad principle of the Roman law. "It is that, where a *bona fide* possessor or purchaser of real estate pays money in discharge of any existing encumbrance or charge upon the estate, having no notice of any infirmity in his title, he is entitled to be repaid the amount of such payment by the true owner seeking to recover the estate from him." (Bright *v.* Boyd, 1 Story, 478, as cited in 29 Mo., *supra;* see also Bright *v.* Boyd, 2 Story, 607.)

In this case, Herron was not an interloper; and Vanderlip, in settling with him, took, as against E. B. Miller's estate, a legal title, subject only to the mortgage of Herron to Miller. His claim, then, constituted a charge upon the land superior to the mortgage; and Walker, who bought the land, takes all the rights in the land which Vanderlip had. Walker, certainly, as the owner of the equity of redemption, was entitled to redeem the mortgage, and also to contest it, by showing that he represented in equity what was equivalent to a prior mortgage, and it does not appear why those rights may not be yet asserted. Limitation would not commence until a clear act of Miller or his representatives repudiating the sale by Herron, and the pleadings show nothing which would put the statute in motion prior to Walker's cross-bill. It does not appear to have been intended to admit by the agreement made, that Walker was precluded

in any way by the foreclosure in the Probate Court, to which he does not appear to have been a party; and it certainly was not intended to admit that those proceedings cut off his right to be subrogated to the right of his vendors. The indefiniteness of the issues intended to be presented by the agreement has been one difficulty in this case; but, notwithstanding this indefiniteness, we think there was evident error in sustaining the exceptions of Harwood, administrator of E. B. Miller, and this error requires a reversal of the cause as to all parties.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.