N. C. BROCKENBOROUGH AND WIFE v. W. T. MELTON.

(Case No. 815.)

1. REGISTRATION.— The legality of the registration of an instrument, under which the clerk of the county court takes a benefit, is not affected by the fact that he records it.

2. JURISDICTION.—The finding of a court of general jurisdiction in regard to the jurisdictional facts on which its judgment is based is conclusive against all collateral attacks, except in cases where the record of its own proceedings disclosed their nullity by showing that jurisdiction had never attached in the particular case.

3. JURISDICTION — ADMINISTRATION.— One who had resided elsewhere in Texas died in Galveston in 1844, where it did not clearly appear that he had a fixed domicile. Administration was granted on his estate to his wife in Galveston county. She qualified, and filed a partial inventory, but nothing more was done either by herself or that court touching the succession. Afterwards, in 1845, letters *de bonis non* were granted on the same estate to the brother of the deceased, in Bastrop county, where the decedent once lived and owned property. The jurisdiction of the court in Bastrop county was exercised on an application for letters, which recited the former grant of letters and that the administratrix intended to resign. Under the letters last granted a full inventory showing a large estate was filed, and the estate administered. The validity of the Bastrop administration was attacked in a suit brought in 1878. *Held*,

(1) That in a collateral attack the jurisdiction of the Bastrop court being invoked on a contemplated resignation and abandonment of the Galveston administration, it will be conclusively presumed that the contingency happened which would validate the grant of letters by the Bastrop court.

(2) That presumption is strengthened by an acquiescence for thirty years in the proceedings of the Bastrop court by all parties having an interest; by the further fact that it did not appear clearly that the deceased had a fixed residence in Galveston; by the fact that the inventory at Galveston was but a partial one, and by the fact that the widow, to whom letters in Galveston were granted, survived twenty-four years and made no complaint, though the administration was closed in Bastrop, and large interests sold under it.

(3) The Bastrop administration was not void for want of jurisdiction.

4. ADMINISTRATOR'S SALE.— A purchaser of land at administrator's sale is chargeable with notice of a prior sale made by the administrator, and approved by the court, of the certificate after its location on the land, and before patent. By the order and approval of the first sale, the court lost jurisdiction of the subject matter; though it would not necessarily follow that the purchaser at the second sale was not a purchaser in good faith, so as to entitle him to pay for valuable improvements. And the purchaser under the second sale might, before eviction, be entitled to recover back the purchase money paid to the administrator, and applied to payment of debts of the estate.

APPEAL from San Saba. Tried below before the Hon. W. A. Blackburn.

*Fisher & Makenson* and *Terrell & Walker*, for appellants.

I. An administration properly granted upon an estate, in the county having jurisdiction, exhausts the jurisdiction of courts of probate upon such estate, and pending such administration another administration begun elsewhere is unauthorized and void. Hart. Dig., arts. 252, 1030 (sec. 36 of probate act of 1840), 1089; Duncan *v.* Veal, 49 Tex., 603; Withers *v.* Patterson, 27 Tex., 499; Freeman on Judgments, secs. 118, 121, 125; Grande *v.* Herrera, 15 Tex., 533.

II. A perfected sale of land in an administration exhausts the jurisdiction of the probate courts over the land sold in that administration, and a second sale in such administration is unauthorized and void. Schmeltz *v.* Garey,

49 Tex., 59; Grande *v.* Chaves, 15 Tex., 550; Burdett *v.* Silsbee, 15 Tex., 604; Lovering *v.* McKenney, 1 Tex., 531; Wardrup *v.* Jones, 23 Tex., 489; Hearne *v.* Camp, 18 Tex., 581; Horan *v.* Wahrenberger, 9 Tex., 313.

*Harwood & Winston*, for appellee.

I. Appellants' first proposition may be correct as a legal conclusion, but it is not applicable to this case, nor is the statement of the testimony borne out by the record. The testimony does not show that administration was *pending* in Galveston county at the time it was begun in Bastrop county. The last act in the Galveston court was of date the 27th of February, 1845. Nothing, as appears from the transcript, was ever done in that court after that date. The petition for letters in the Bastrop court, filed March 7, 1845, alleges that the administratrix intended to resign the administration in Galveston. The presumption is, she did resign at the February court, and that there was proof of that fact before the Bastrop court when it assumed jurisdictional power over the estate. The Bastrop court granted letters of administration to D. F. Brown on the 31st of March, 1845. Pleasants *v.* Duncan, 47 Tex., 355; Burdett *v.* Silsbee, 15 Tex., 604. The evidence shows that J. Porter Brown had no fixed place of residence. He died in Galveston in July, 1844, but evidently it cannot be said he had any fixed residence anywhere. He returned from a visit to Tennessee in spring of 1842, and between that time and his death in 1844, two years, he had lived in Bastrop county, in Travis county and in San Jacinto county. This question was adjudicated by the probate court of Bastrop county when it granted the letters to D. F. Brown. The presumption is, it had all the facts before it and passed judgment upon the law and facts at the time its decree was made (Hart. Dig., arts. 1087, 1030), and its judgment cannot be attacked in a collateral action. Giddings *v.* Steele, 28 Tex.,

449; Grande *v.* Herrera, 15 Tex., 534; Burdett *v.* Silsbee, 15 Tex., 604; Dancy *v.* Stricklinge, 15 Tex., 557; Pleasants *v.* Duncan, 47 Tex., 355; Guilford *v.* Love, 49 Tex., 715. It will also be seen by reference to the inventory that deceased owned valuable property in Bastrop county, or "principal effects." Hart. Dig., art. 1030.

II. The probate court as to matters pertaining to estates of deceased persons is a court of record and of full and complete power and jurisdiction, and its judgments cannot be attacked in a collateral action. Guilford *v.* Love *et als.* and authorities there cited; 49 Tex., 715.

It will be presumed that the facts existed which gave the Bastrop court jurisdiction. Giddings *v.* Steele, 28 Tex., 749; Hart. Dig., art. 1087.

BONNER, ASSOCIATE JUSTICE.— The subject matter of this suit is the north half of block No. 10 of Harwood & Fentress' addition to the town of San Saba, being part of nine hundred and sixty acres of land patented April 9, 1849, to J. Porter Brown, by virtue of the Ozwin Wilcox bounty warrant.

The suit is one of trespass to try title, brought July 8, 1878, by appellant, Sallie F. Brockenborough, joined by her husband, against appellee W. T. Melton. Both parties claim under J. Porter Brown as a common source of title.

Plaintiffs' claim of title is two-fold: *First*, in right of Mrs. Brockenborough as one of the children and heirs at law of J. Porter Brown, deceased; *second*, that in the event the administration *de bonis non* upon his estate, granted by the probate court of Bastrop county to David F. Brown, be held valid, then under deed made by him as such administrator to Joseph Brown, Sr., the grandfather of Mrs. Brockenborough, conveying the interest in the Ozwin Wilcox bounty warrant.

Defendant Melton claims under subsequent deed made

by said administrator to J. C. Rogan, conveying the land in controversy, and by mesne conveyances down to himself. The defendant claims the benefit of the statute of limitations, stale demand, possession and improvements in good faith, the validity of the Bastrop county administration, and that plaintiffs are estopped from denying the same, because Mrs. Brockenborough received a large amount of property thereunder as one of the distributees, and by her acts has recognized the validity of the sale under which defendant claims, and has encouraged others to buy and improve lots under the same title, and that before she could recover she should account for the purchase money received by the estate.

The material facts concerning this administration and the two sales thereunder, above referred to, presented by the record, are as follows: The deceased J. Porter Brown, having at one time resided in Texas, and having visited the state of Tennessee in 1841, again returned to Texas in 1842. He then lived for a while in Bastrop county, then in Travis county, then in San Jacinto county, and then in the city of Galveston, at which place he died in July or August, 1844. He left a surviving wife, Jane S. Brown. His surviving children are the plaintiffs, Mrs. Brockenborough and J. Frazer Brown, who does not join in this suit. At the time of his death he was engaged in shipping wood to Galveston. His family were boarding. He had not purchased a residence, but had purchased lumber with a view of building one. After his death, Jane S. Brown, his surviving wife, applied to the probate court of Galveston county for letters of administration upon his estate, which were granted, and she qualified as such August 10, 1844. Neither the application nor order states upon what ground that court had jurisdiction to grant the administration. Subsequently, September 10, 1844, she returned an inventory of a few articles of personal property, amounting to $485; and on February 27,

1845, she returned an additional inventory, consisting of a few other articles of personal property, and three hundred and seventy-five acres of land in San Jacinto county. No order of court is shown approving either of these inventories, and it does not appear that anything whatever was done in this administration after February 27, 1845.

Subsequently, March 7, 1845, David F. Brown, a brother and creditor of the deceased, applied to the probate court of Bastrop county for letters of administration *de bonis non*, reciting in his application that Mrs. Brown intended to resign the administration granted in Galveston county. Nothing more is shown in regard to that administration, or Mrs. Brown, further than that she died in 1869; whether testate or intestate does not appear. Letters *de bonis non* were granted to David F. Brown upon his application, and his bond approved May 26, 1845. He had possession, as property of the estate, of a large amount of lands and land certificates, and applied the proceeds of certain sales thereof, made by order of the court, to the indebtedness of the estate, amounting to several thousand dollars. At the December term, 1857, he was discharged, and his final account, showing that the estate was indebted to him $115.91, was approved.

During the pendency of this administration the Ozwin Wilcox bounty warrant, upon which the land in controversy was subsequently patented, was by order of the court sold on the first Tuesday in July, 1846, and bought by Joseph Brown, Sr., for $101. It would appear from certain recitals in the record that this warrant was at that time located. The report of sale made by the administrator states that it was "purchased by Joseph Brown, Sr., for the benefit of J. Porter Brown's children." This report was approved and deed ordered to be made to the purchaser, which was accordingly done on July 15, 1846. This deed was made to Joseph Brown, Sr., with-

out any recital that the property was bid in for the children, but did recite "That the administrator reserved to himself a locative interest in the said certificates (the Wilcox and another), together with all reasonable and necessary expense in procuring patents for the same, as well as twenty-one dollars in the purchase money of the certificates, which has not been advanced by the said Joseph Brown, Sr."

August 2, 1856, the administrator made an additional inventory of several tracts of land, and among others the nine hundred and sixty acres, including that in controversy, which had, after the above mentioned sale, been patented. Why this property was again inventoried does not appear, further than from a recital in the inventory that it had been formerly sold by order of the court, and "bought in for the benefit of said estate by Joseph Brown, Sr." Neither does it appear how the locative interest, which was reserved to the administrator, became reinvested in the estate.

This inventory was sworn to, and was examined and received by the court. The testimony shows that the administrator paid fees and expenses for the location and patent. It is also shown that Joseph Brown, Sr., died in 1864, eighteen years after he had bought the certificate and eight years after the additional inventory and subsequent sale of the land; and it does not appear that he set up title or claim thereto or exercised any acts of ownership over it. Neither does it appear whether he died testate or intestate, or the number of heirs he left surviving him.

At the August term, 1856, the probate court of Bastrop county ordered the administrator to sell eight hundred and sixty-seven acres of this nine hundred and sixty acres, he having, under previous order, sold ninety-three acres upon which to locate the town of San Saba. This eight hundred and sixty-seven acres brought the sum of

$3,804.09, J. C. Rogan having purchased the principal part thereof, including that in controversy. The report of this sale was by the court "received, confirmed, and in all things ratified," and deed ordered to be made to the purchaser, which was done November 1, 1856. Although Rogan's note given for the purchase money of this land was not in fact paid, having been given to his wife, who was a daughter of the administrator, yet he charges himself with the same in his final account.

On the trial below a jury was waived, the cause submitted to the judge, and judgment rendered for defendant Melton, from which the appeal is prosecuted.

The first assigned error in this case presents the question of the legality of the registration of a power of attorney from Harwood and wife to James F. Brown, and deed made by virtue thereof to D. W. Fentress, under which defendant Melton claims title — these instruments having been recorded by the said James F. Brown as clerk.

We have not been referred to any authority showing that this was an illegal registration. The clerk of the county court was required to record all instruments of writing authorized or required to be recorded. Pasch. Dig., arts. 5001, 5013.

In the event the district clerk or sheriff shall be a party to any suit pending in the district court, the judge presiding has the power to appoint a clerk or sheriff *pro tem.* Sayles' Practice, §§ 8, 16; Laws First Session 12th Leg., 89.

Our attention has not been called to any statute which made a similar provision for the appointment of a recorder *pro tem.* when the clerk of the county court was a party to the instrument to be recorded; and in the absence of such statute, it would seem that of necessity the regular clerk not only has the power, but it would be his duty, to record in such cases. There is not the same reasons on grounds of public policy why the mere me-

chanical duty of recording an instrument by the clerk, to which he is a party, should avoid its registry, as would exist in the performance of an act judicial in its character.

The second assigned error raises the question whether the grant of administration *de bonis non* by the probate court of Bastrop county was void for want of jurisdiction, by reason of the prior grant of administration by the probate court of Galveston county.

Upon this collateral attack, we cannot inquire into the question whether the administrator faithfully performed the duties of his trust. If not, he was liable on his bond to Mrs. Brockenborough as one of the heirs of the estate; but it would not affect the validity of the administration or the title to the land sold thereunder. To do this, the proceedings must have been absolutely void for want of jurisdiction.

The cases which have been cited by counsel or which have come under our observation, in which the subsequent grant of administration has been held void, belong to one of two classes; *first*, those in which there was no necessity for administration, as in Fisk *v.* Norvel, 9 Tex., 13; Wardup *v.* Jones, 23 Tex., 489; Duncan *v.* Veal, 49 Tex., 603; *second*, those in which the former administration was still a *subsisting* one, as Lovering *v.* McKinney, 7 Tex., 521; Grande *v.* Chaves, 15 Tex., 550; Burdett *v.* Silsbee, 15 Tex., 604.

The leading case upon this subject, of Griffith *v.* Frazier, 8 Cranch, 8, was that of executorship, and in which it was decided that, under the laws of South Carolina, the removal of the executor to another state after he had qualified and taken upon himself the burden of executing the will, did not so far vacate his office as to reinvest the court with the power to appoint an administrator in his stead.

The case in our own reports most nearly in point is that of Grande *v.* Herrera, 15 Tex., 533. Juan Antonio

Padilla removed from Bexar to Nacogdoches county and died there in 1839. His surviving wife obtained letters of administration on his estate in Nacogdoches county. The records of the probate court, however, show no further acts of administration than taking out the letters and filing the bond and oath. But there was evidence that in 1840 a judgment was obtained against the administratrix, under which property was sold in Nacogdoches county in 1844, and the judgment partly satisfied, leaving a large balance still due. The record, as in the case now under consideration, fails to show any formal order closing out that administration.

The wife died in 1846, and administration was taken out on her estate the same year, also in Nacogdoches county. This latter administration ceased by the death of the administrator in 1851. But during its pendency, in 1847, administration was taken out in Bexar county on the joint estates of both husband and wife. Under this second administration, a lot of land belonging to the community was sold by order of the court. The suit was brought by the heirs to recover it. *Held*, that the sale was valid; that the fact that the second grant of administration was general, and not, as in the present case, one *de bonis non*, did not affect the power of the court, and that the administration *de bonis non* was not void because taken out in another county than that in which the original letters were granted.

A branch of that case came before the supreme court at the same term (Grande *v.* Chaves, 15 Tex., 550), in which it was decided that the sale of a lot, the separate property of the wife, made by order of the probate court of Bexar county, under this joint administration, was void, because it appeared that at the time there was a subsisting administration pending in Nacogdoches county on the estate of the wife, bringing it within the second class of cases above mentioned.

The general rule is well settled, that the finding of a court of general jurisdiction, in regard to the jurisdictional facts upon which its judgment is based, is as conclusive in all collateral proceeding as any other adjudication. Wyatt's Adm'r v. Steele, 26 Ala., 650; Freeman on Judg., § 130.

With us, different from what it was at common law, the probate court is one of general jurisdiction over estates of deceased persons. Guilford v. Love, 49 Tex., 715; Murchison v. White, 54 Tex., 78; Tebbetts v. Tilton, 4 Foster (N. H.), 124; Irwin v. Scribner, 18 Cal., 500. Judge Tucker in Fisher v. Bassett says: "I do not consider a county or hustings court, in relation to the grant of administration, as standing on the same footing with the ordinary in England. The county court is a court of record, and its judgments or sentences cannot be questioned collaterally in other actions, provided it has jurisdiction of the cause. 6 Bac. Abr., Sheriffs, M. 2, 166; 3 Wills, 345. And this is to be understood as having reference to jurisdiction over the *subject matter;* for though it may be that the *facts* do not give jurisdiction over the *particular* case, yet if the jurisdiction extends over that *class of cases*, the judgment cannot be ·questioned; for then the question of jurisdiction enters into and becomes an essential part of the judgment of the court." He adds, "Where the court has jurisdiction of cases *ejusdem generis*, its judgment in any case is not merely void, because its invalidity cannot appear without an inquiry into the facts; an inquiry which the court itself must be presumed to have made, and which will not therefore be permitted to be revived collaterally." 9 Serg., 132; Irwin v. Scribner, 18 Cal., 500.

The rule as thus laid down would not apply to those cases where it affirmatively appeared upon the face of the record that the jurisdiction had not attached in the particular case, as in Hearn v. Camp, 18 Tex., 545.

It was decided in Pleasants *v.* Dunkin, 47 Tex., 343, that under the laws in force in 1840 (which governed the administration in the present case) the probate court had power to grant administration on the estates of persons not "inhabitants of or resident in the county at the time of their decease."

That the jurisdiction of the probate court of Galveston county had previously been invoked was made known to the probate court of Bastrop county in the petition of David F. Brown for letters *de bonis non.* It was further made known that Mrs. Brown, the administratix, intended to resign. Her resignation then and the abandonment of that administration were directly made as preliminary jurisdictional questions to the appointment of David F. Brown; and that the contingency happened upon which that appointment could be made, and that the probate court of Bastrop county otherwise had jurisdiction over this estate under some of the provisions of the then existing statute (Hart. Dig., art. 1030), must, we think, on a collateral attack be conclusively presumed. This presumption is greatly strengthened when we consider the facts and circumstances of the case — that it is now more than thirty years, the average duration of human life, since that administration was opened; that it does not clearly appear that the deceased had such fixed domicile or residence in the county of Galveston as gave that county preference of jurisdiction under the statute; that the first grant of letters was to the wife, and the second to the brother, and who was a creditor of the deceased; that she never inventoried but a small part of the estate; that the last act of the wife in her administration was prior to the petition of the brother for letters *de bonis non;* that although she did not die until 1869, a period of twenty-four years after letters issued to the brother, yet during all that time neither she nor any one else is heard to complain of the grant of administration in Bas-

trop county, though it was being carried on, a large amount of property sold, and the administration finally closed. Monell *v.* Denison, 17 How. Pr. (N. Y.), 426.

Not to so presume would open a flood-gate of litigation, and, as said by Wheeler, Justice, in Burdett *v.* Silsbee, would be attended with the most dangerous and alarming consequences. 15 Tex., 619; Monell *v.* Denison, 17 How. Pr. (N. Y.), 426; Irwin *v.* Scribner, 18 Cal., 500.

We are of opinion that the administration *de bonis non* granted by the probate court of Bastrop county upon the estate of J. Porter Brown was not void for the want of jurisdiction, and that the title to the property sold thereunder was divested out of the estate, and that, as to such property, Mrs. Brockenborough cannot claim title as an heir of her father, J. Porter Brown.

The second assigned error presents also the question whether Mrs. Brockenborough can claim title to the property in controversy through the sale of the Ozwin Wilcox bounty warrant to her grandfather, Joseph Brown, Sr.

This involves the further question, whether by that sale the probate court so far lost jurisdiction over the property that the subsequent sale under which defendant Melton claims was void.

Upon this issue the case as presented by the record is not fully developed, and is by no means free from difficulty. It would seem, however, that the warrant was at that time located. The report of that sale shows that the property was bid in by Joseph Brown, Sr., for the benefit of J. Porter Brown's children. There is no testimony, however, that they advanced the purchase money, and the deed was made to him without stating that he held it in trust for the children.

This deed reserved a locative interest to the administrator, but what that interest was does not appear. It also

recited that there was $21 of the purchase money still unpaid. When the administrator subsequently, in 1856, made an inventory of the land, he recited therein that it had been bought in by Joseph Brown, Sr., for the use of the estate. If thus bought, it does not appear why a deed was made to him, or why he was required to pay the purchase money. This recital evidently could not bind him if he held adversely to the estate. But why he took no steps to assert his title during the many years from the date of his purchase until his death is wholly unexplained. Neither is it shown how the locative interest of the administrator again became the property of the estate, though the administrator doubtless, by his inventory and sale, would be estopped from denying this. This locative interest which seems to have been undivided would pass to the purchaser under whom defendant Milton claims, but as presented by the record it is not clear that the remainder would. Again, the record fails to show whether Joseph Brown, Sr., died testate or intestate, and how many heirs he left surviving him. No presumption would arise that he left a will, and in the absence of a will the law would presume that the plaintiff, in right of her deceased father, would be one of the heirs of her grandfather, Joseph Brown, Sr.

We are of opinion that, as the defendant Melton derives his title through an administration sale, he would be held chargeable with constructive notice of the want of jurisdiction in the court to order the sale; and further, that if, as it would seem from the record as now presented, the administrator had previously sold and conveyed by order of the court all of the land except a locative interest, that as to the interest thus sold the court had lost its jurisdiction to order a new sale. Withers v. Patterson, 27 Tex., 500; Lindsay v. Jaffray (decided at present term).

If, then, by the first sale the title to the property be-

came vested in Joseph Brown, Sr., and if Mrs. Brockenborough was one of his heirs, it would follow that upon the mere question of title she had such an interest in the property as should have authorized a judgment admitting her into joint possession of the land with the defendant.

It would not follow, however, under the decision of this court in French v. Grenet (Austin term, 1881), but that the defendant might be such purchaser in good faith as would be entitled to payment for valuable improvements, or be entitled to have his improvements allotted to him on partition, with all the proper parties before the court.   Neither would it follow but that the plaintiff, before she could recover possession, should refund the purchase money paid to the administrator and applied to the discharge of debts against the estate, which were a charge upon any property she may have received as a distributee.

As the court below found for the defendant, it did not become necessary to pass upon these questions, which otherwise would have properly arisen in the case.

A serious question is presented under the defendant's plea of estoppel, but the alleged facts in regard to Mrs. Brockenborough having received a distributive share of property under this administration, and the other facts under this plea and that of the statute of limitations, seem not to be fully developed, and no opinion is expressed in regard to them.

Under the case as presented by the record, we are of opinion that the judgment below should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 19, 1881.]