PRISCILLA STEPHENSON ET AL. v. T. L. MARSALIS ET AL.

No. 818.

1. **Joint Administration of Community Property.**
Where there are community debts, a joint administration may be granted on the community estate of a husband and wife, both deceased.

2. **Homestead Not Subject to Administration, When.**
The homestead of an insolvent decedent, where a constituent of the family survives, descends and vests absolutely in the heirs, and is not assets in the hands of the administrator subject to the payment of debts of the decedent.

3. **Void Administrator's Sale of Homestead—Estoppel of Heirs by Receipt of Proceeds.**
Where an administrator made an unauthorized and void sale of the homestead, and thereafter the heirs, including minors and married women, voluntarily became parties to the proceedings on final settlement, and received the greater part of the purchase money, together with other unsold land, which was subject to sale, they were estopped thereby to recover the homestead from the purchaser without refunding the proceeds so received.

APPEAL from Dallas. Tried below before Hon. CHAS. F. TUCKER.

*Frank Reeves* and *Jeff Word,* for appellants.—1. The grant of administration on the joint estates of J. W. and Priscilla Stephenson, resulting in the sale of the estate of J. W. Stephenson in part for the payment of debts contracted by Priscilla Stephenson, subsequent to his

death, was void and without jurisdiction, and the court erred in not so holding. Rev. Stats., arts. 1794, 1835, 1886, 1890.

2.    The payment to and the receipt by the guardians of minors and the husbands of married women of part of the moneys arising from the sale of their land, made under an erroneous order of the Probate Court would not estop the minors and married women from having said order revised (by certiorari), nor would they be required as a condition precedent to their right to institute suit to return or tender back said money; and the court erred in so holding. Fitzgerald v. Turner, 43 Texas, 84; Woolridge v. Hancock, 70 Texas, 21; Bynam v. Preston, 69 Texas, 286; Steel v. Petty, 65 Texas, 496.

3.    On the death of both parents, leaving a constituent of their family surviving, their homestead descends to and vests in their heirs; the Probate Court would have no jurisdiction of a controversy between the administrator of their parents' estate, and such heirs claiming title to a tract of land by reason of the same having been the homestead of their deceased parents at the time of their death. And the court erred in not so holding. Wadsworth v. Chick, 55 Texas, 242; Wise v. O'Malley, 60 Texas, 588; Heirs of Edwards v. Mounts, 61 Texas, 398.

*Dickson & Moroney,* for appellees, cited in support of the trial court's conclusions: Rev. Stats., arts. 290, 291, 1789; Ivey v. Harrell, 1 Texas Civ. App., 226; Const., art. 5, sec. 16; Pelham v. Murray, 64 Texas, 477; Weems v. Masterson, 80 Texas, 45; Rev. Stats., arts. 1801, 1818, 1826, 1993, 1994, 2000, 2003, 2004, 2005; McLane v. Paschal, 42 Texas, 102; Nichols v. Dibrell, 61 Texas, 539; Henderson v. Terry, 62 Texas, 281; Givens v. Hudson, 64 Texas, 471; Ashe v. Youngst, 65 Texas, 631; Stroud v. Casey, 25 Texas, 740; Peticolas v. Carpenter, 53 Texas, 23; Haile v. Langdon's heirs, 60 Texas, 555; Rev. Stats., arts. 1826, 2318; Howard v. North, 5 Texas, 290; Bailey v. White, 13 Texas, 114; Andrews v. Richardson, 21 Texas, 287; Morton v. Welborn, 21 Texas, 772; Johnson v. Caldwell, 38 Texas, 217; Walker v. Lawler, 45 Texas, 532; Ryan v. Maxey, 43 Texas, 192; Grand v. Chaves, 15 Texas, 550; Dancey v. Stricklings, 15 Texas, 557; McGowen v. Zimpleman, 53 Texas, 479; Cameron v. Morris, 83 Texas, 14; Wordstock Iron Co. v. Fullenwider, 87 Alabama, 584; s. c., 13 Am. St. Rep., 73; Freeman Void Judicial Sales, sec. 50; Ellis v. Stone, 23 S. W. Rep., 405; Freeman on Executions, sec. 351a.

LIGHTFOOT, CHIEF JUSTICE.—Appellants' statement of the case is substantially correct, as follows: This suit was instituted by appellants. Their petition contained two counts: one in the ordinary form of an action of trespass to try title; the other, which was the first contained in the petition, represented that appellants were the children and only heirs of J. W. Stephenson, and his wife Priscilla Stephenson, both of whom died in January, 1885. Mrs. Stephenson died after the death of her husband. The land in controversy was their homestead, and

continued to be the homestead of Mrs. Stephenson after the death of her husband until her death.

That appellants Priscilla and Jennie Stephenson, their daughters, were minors at the time of the death of their parents, and were members and constituents of the family of their parents up to the time of the death of their father, and remained members of their mother's family until her death.

That administration was opened on the joint estates of J. W. and Priscilla Stephenson, resulting in the sale of the homestead. The appellee P. W. Linskie, was the administrator of said estates, and each of the other appellees claims a part of said home tract, deraigning title through the purchaser at said sale, who is also made a party.

Appellants specifically set up all the proceedings had in the Probate Court from the grant of administration down to the order approving the sale by the administrator of said homestead, in compliance with the order of the court made prior thereto, and applied for a writ of certiorari to the County Court to revise and correct all the proceedings had in the Probate Court, which writ was granted. Certiorari bond was given, the writ was issued and duly served on the clerk of the County Court, and a transcript of all of said proceedings was filed by him with the papers of the cause.

The answer of the defendants contained a general denial, plea of limitation, and a special plea to the effect that after the sale appellants acquiesced in it, by accepting their pro rata share of the surplus of the proceeds left after paying approved claims and costs of administration, and that the property remaining unsold was also turned over to appellants and received by them. Also, special plea that appellees, except Linskie, were purchasers in good faith, for value, without notice of any matters affecting the validity of their title. The cause was submitted to the court, who rendered a judgment for appellees, and the case is brought to this court by appeal.

The conclusions of fact found by the court below are not excepted to by appellants, and are adopted. So much thereof as we deem important to the decision of the case we here set out, as follows:

"(1.) In January, 1885, J. W. and Priscilla Stephenson, husband and wife, died intestate, within a few days of each other (the husband's death preceding that of the wife), leaving as their only heirs an adult son, J. E. Stephenson, Lelia Duncan, wife of Robert Duncan, Sallie B. Tunnell, wife of J. B. Tunnell, Ella C. Bumpas, wife of J. H. Bumpas, and Jennie Stephenson and Priscilla Stephenson, minors, all the heirs, being the surviving children of deceased.

"(2.) At the time of and before the death of said parents, their family consisted of themselves and said minor children. They lived on a four-acre tract of land, being the property in controversy in this suit, and it was in fact their homestead. After their death, Robert Duncan was by the County Court of Dallas County, sitting for probate business, appointed guardian of the estate of Priscilla Stephenson, and J. D. Tunnell

was appointed guardian of the estate of Jennie Stephenson, and said minors lived with their said guardians, and none of the heirs ever after lived on the said four acres in controversy, or otherwise used or occupied the same, or attempted to do so, until the institution of this suit, and it was not used or occupied by them or any of them for any purpose.

"(3.) The estate also included another three-acre tract of land, no part of the homestead, of the value of $150.

"(4.) Excluding said four-acre tract, the estate was insolvent; including it, the estate was solvent.

"(5.) After the surviving members of the family had vacated said homestead tract, and when it was entirely unoccupied, P. W. Linskie applied to the County Court of Dallas County, sitting in probate business, for joint letters of administration on the community estate of said J. W. and Priscilla Stephenson, deceased, to pay debts, and on September 10, 1885, after proper notice had been given, administration was granted on the community estate of the decedents, said property being community property, and the debts being alleged community debts. The proceedings were entirely regular. Said four-acre tract was inventoried at $1000 and said three-acre tract at $150. On September 28, 1885, P. W. Linskie's bond as administrator of the community estate of both decedents was approved and letters of administration issued to him. September 22, 1885, the inventory and appraisement of said estates was filed, containing no property except said two tracts of land.

"(6.) Claims against the estate were regularly presented and allowed in favor of the following parties: P. W. Linskie, $105; J. M. Quinney, M. D., $28; C. C. Gillespie, M. D., $30; T. Y. Terry, $127; J. H. Bumpas, $34. The bulk of the claims being for undertaker's and doctors' bills, and one claim, that of J. H. Bumpas, being in favor of one of the plaintiffs to this suit. The claim of P. W. Linskie only, for funeral expenses, was allowed as a first class claim.

"(7.) On December 5, 1885, the administrator filed his application to sell both said tracts of land, to pay the approved debts.  *   *   *

The application was properly signed and sworn to. Due notice to all parties in interest was given, as provided by statute. February 24, 1886, J. E. Stephenson, for himself and as next friend of the minor heirs, filed an answer resisting said application, claiming said four acres as exempt on the ground that it was homestead, and asking that it be set aside for the benefit of the minors. The other heirs did not resist the application to sell. On July 7, 1886, the court overruled objections to the sale, on what ground does not appear, and ordered the property sold, and said four acres were regularly sold to Jno. W. Wright for $1205, who bought in actual good faith, for a full and adequate consideration, at a fair sale, all the proceedings being entirely regular and according to the statute. No notice of appeal was given from the order of sale, and no other objections were made to the sale until this suit was instituted. The other defendants in this cause claim under mesne conveyances from

Wright, and they are also admitted to be innocent purchasers for a valuable and adequate consideration.

The report of sale is dated July 26, 1886, the administrator reporting to the court that he had sold said four-acre tract for one-half cash and the balance on time. On December 24, 1886, this report was by the court approved and the administrator ordered to execute and deliver to the said Jno. W. Wright the proper deed of conveyance on his complying with the terms of sale. This report and the action of the court thereon is regular. The record shows that no disposition was made of the other tract of land.

"(8.) The four-acre tract having sold for more than enough to pay the debts and expenses of administration, the three-acre tract was not sold. On February 8, 1887, the administrator filed his account for final settlement, showing sale of said four-acre tract, collection of its price, payment of debts, and balance of about $110 on hand in favor of each heir, less some advancements previously made to some of the heirs. All of the heirs voluntarily appeared, and the record shows that they were voluntarily in person before the court. Exceptions were filed to some items of expense, which were sustained by the court, and the report otherwise confirmed and approved. No exception was taken by any one to the ruling of the court. The heirs all received their pro rata share of the funds on hand, the guardians received the shares allotted to the minors, and the husbands of the married women receiving the shares allotted to their wives; receipts were duly executed and filed, the three-acre tract was turned back to the heirs, and the administration finally closed, all parties being before the court and there being no exception, appeal or notice of appeal by any party.

"(9.) After the death of J. W. Stephenson, neither his widow Priscilla Stephenson, nor either of their minor daughters, Jennie and Priscilla Stephenson, ever acquired any other property, except the part proceeds of the administrator's sale paid to the guardians of the minors as set forth.

"(10.) At the time of the institution of this suit, Jennie and Priscilla Stephenson were still minors and unmarried; since the institution of this suit Priscilla Stephenson has become of age. At the time of the death of J. W. Stephenson, as well as at the time of the death of Priscilla Stephenson, their mother, the plaintiffs Ella C. Bumpas, Sallie B. Tunnell and Lelia Duncan were, and ever since have been married to their present husbands. At the time of the institution of this suit J. E. Stephenson was 25 or 26 years of age.

*Opinion.*—Without entering into a discussion of all the interesting questions raised by counsel, we shall notice only the leading propositions, upon which we think the decision of the case must turn.

It is claimed by appellants under their fourth assignment of error that "the grant of administration upon the joint estates of J. W. and Priscilla Stephenson, resulting in the sale of the estate of J. W. Stephen-

son in part of the payment of debts contracted by Priscilla Stephenson, subsequent to his death, was void and without jurisdiction, and the court erred in not so holding."

The letters of administration were granted upon the community estate of J. W. and Priscilla Stephenson, as shown by the conclusions of fact of the court below, to which no exception is made by appellants.

If the letters of administration were properly granted, the subsequent allowance and approval of some debts which were not proper claims against the community estate, would not affect the validity of the administration, however they might affect the debts so improperly allowed, if attacked in the proper manner and with the proper parties before the court.

In this case it is not questioned that there were valid and subsisting debts against the community estate of J. W. and Priscilla Stephenson. In the case of Grande v. Herrera, 15 Texas, 538, Judge Hemphill said: "The grant including two estates under one administration is something of a novelty, but would not be void, either in whole or in part, if the court had jurisdiction of both estates. It would in many cases be productive of inconveniences; in others, it would seem to be quite proper and convenient, as in cases of joint property or community of goods between husband and wife." This case is referred to with approval in Brockenborough v. Melton, 55 Texas, 502.

Here the property administered was all the community estate of J. W. and Priscilla Stephenson, and we see no impropriety in a joint administration. It is true that under such an administration it might be erroneous for the Probate Court to subject the community estate, as such, to the payment of the separate debts of one of the decedents, but it is useless to enter into a discussion of that question for the reason that the debts allowed and approved by the Probate Court became judgments against the community estate, and the creditors holding such claims are not parties to this suit, nor are the conclusions of the court below or such judgments attacked in such a way as to authorize us to act upon them. But, if they were, and the writ of certiorari (without the creditors whose claims are sought to be affected being before the court) should be considered as passing in review those judgments, and all claims not against the community estate were stricken out under proper proof, it is still not denied that a portion of the debts allowed and approved are valid community debts, and furnished ample ground upon which to base an administration and an order of sale.

This brings us to the question which has been properly raised by appellants—whether the homestead of the family was subject to administration and sale for the payment of debts. Under the undisputed facts, we think it clear that at the death of J. W. Stephenson he left his widow and minor children surviving him, and the land in controversy as his homestead, and that it was not subject to sale for the payment of debts. The estate being insolvent, and there being constituent members of the family surviving, the decedent's interest in the property, under our

constitution and laws, descended (subject to the homestead claim) to his heirs. Zwernemann v. Von Rosenberg, 76 Texas, 522; Childers v. Henderson, 76 Texas, 667; Hall v. Fields, 81 Texas, 553.

Mrs. Priscilla Stephenson died about ten days after the death of her husband, leaving this property still the homestead, and two minor children constituent members of the family. Under the above rule, her interest in the property descended to her heirs, who were the same as the heirs of her husband. Under this state of facts, an administration was granted upon the estate of J. W. and Priscilla Stephenson, and the property in controversy was inventoried as a part of the estate. The court, upon application of the minors, refused to set it aside to them as a homestead, and it was sold by the administrator under an order of the Probate Court, for a fair price, the sale confirmed, and deed executed to the purchaser in compliance with the decree, and he paid the purchase price in full. Ordinarily, the property of a party at his death descends to his heirs, subject to the payment of the debts of such decedent; but the homestead, which is exempt from the payment of debts, if a constituent of the family remains, descends and becomes vested absolutely in the heirs, and is not assets in the hands of the administrator subject to the payment of debts. This question was fully settled by our Supreme Court in an able and exhaustive opinion by Judge Gaines in the case of Zwernemann v. Von Rosenberg, 76 Texas, 522 (Judge Stayton dissenting). On page 527 the court says: "The provisions we have quoted clearly show that it was the legislative intent to utterly exempt the homestead from the claims of the general creditors of the estate, provided a constituent of the family survived the decedent, and in case the estate was insolvent, to remove it beyond the pale of administration. This is in accordance with all previous legislation, and is not repugnant to the Constitution."

The same position is taken in the case of Chilers v. Henderson, 76 Texas, 667, where Judge Henry says: "The Constitution takes it for granted that the protection from forced sale of the homestead 'of a family' will enure to the benefit of every surviving constituent of the family, without express mention, as is shown by its providing against its being partitioned contrary to the right of occupancy of the surviving husband, wife and minor children, without mention of creditors.

"Subject to the manner of its final partition and its use until then, its status with regard to creditors was left, as it always had been, to the Legislature. When upon the death of the owner of the homestead, no constituent of the family survives, and as a consequence there remains no family, the exemption ceases and the homestead becomes subject, like other real estate, to be sold for the payment of debts. Givens v. Hudson, 64 Texas, 471.

"But if upon the death of the owner, any constituent of the family survives, so that the family continues to be represented, then the homestead, subject to the prior right of occupancy of such as are protected in remaining, descends and vests in the heirs of the owner." See Brau v. Von Rosenberg, 76 Texas, 522; also, Lacy v. Lockett, 82 Texas, 193.

The title to the land in controversy being fully vested in the appellants after the death of their mother, Priscilla Stephenson, free from debts and free from administration, it was not subject to sale by the administrator. Such sale was a nullity, and could not divest the title of appellants and vest it in the purchaser at such sale any more than it could thus transfer the title of any other stranger.

The Probate Court, while possessing a general jurisdiction under the statute in the administration of estates, has no jurisdiction whatever to pass upon a question of title. A sale made by an administrator under its direction confers upon the purchaser such title as the estate has, subject to administration, and nothing more. If the investigation stopped at this point, we would feel constrained to hold that the appellants should recover, upon the ground that such a proceeding in the Probate Court would not divest them of the property.

But it is necessary to go deeper into the case. It fully appears that the appellants are all heirs of both J. W. and Priscilla Stephenson, deceased, that they all voluntarily became parties to the partition proceeding in the Probate Court and contested some items in the final account of the administrator. The account set out the sale of the land, the payment of the purchase money by the vendee, the payment of the debts of the estate out of a part of the proceeds, that the remainder of the money was on hand, and also a tract of three acres of land remained which was subject to partition among the heirs. The only point in the report contested seems to have been some matter of expense, which appears to have been satisfactorily adjusted, and the report was approved without further objection. The balance of the proceeds (about two-thirds of the entire purchase money) was partitioned among the appellants as heirs of the decedents, and the three-acre tract of land unsold was also turned over to them. It is not questioned that the three acres valued at $150 was assets of the estate subject to the payment of debts. The question arising upon this part of the case is, whether appellants should be allowed to recover the land sued for, without returning or offering to return the purchase money which they have received and still retain, together with the three acres of land which, except for the money used in its stead, would necessarily have been sold and applied to the payment of the debts.

Appellants contend that inasmuch as they were all (with one exception) minors and married women at the time of the sale and partition, they are not estopped from claiming the land. They invoke the doctrine that they cannot be estopped unless their acts were intentional and fraudulent, and upon this line we are referred to the cases of Fitzgerald v. Turner, 43 Texas; Johnson v. Bryan, 62 Texas, 623; Steed v. Petty, 65 Texas, 490: Mayo v. Tudor, 74 Texas, 471. After a thorough examination of these cases, we do not consider them applicable to the facts of this case.

. In our State, it is true, that married women and infants have always been guarded with vigilance and their rights carefully protected under

the law, but we do not think it has ever been the policy of our law to become, itself, an instrument of fraud to subserve this purpose.

The law of estoppel is thus clearly stated by one of our leading text writers: "No man can adopt that part of a transaction which is favorable to him, and reject the rest to the injury of those from whom he derives the benefit. This application of the law of estoppel admits of less mistake or misapprehension than any other, and is a favorable doctrine with all tribunals whenever the circumstances are such as to admit of its application. Therefore, where those who are entitled to avoid a sale, adopt and ratify it, equity will estop them from afterward setting it aside for reasons which are too plain for statement. Where a sale of land is made, no one can be permitted to receive both the money and the land. * * *

"Equitable estoppels of this character apply to infants as well as to adults, to insolvent trustees and guardians, as well as to persons acting for themselves, and have place as well when the proceeds arise from a sale by authority of law, as where they spring from the act of the party. The receipt of the purchase money is an affirmance of the sale, whether it were void or only voidable." 2 Herman on Est., secs. 800, 801.

It has been held that the conduct of infants and married women may result in what could not be done by an express attempt on their part to do by contract. Bigelow on Est., 607.

These general principles are well supported by the decisions of other States, and it has been held by the Supreme Court of Alabama in an able opinion, that even though the sale be void and the purchaser acquires no legal title whatever under it, yet, if the heirs get the benefit of the purchase money, either directly or indirectly, they can not recover the land. The court says: "Regarding the proceedings in the Probate Court as void at law for the reasons stated, what, we may enquire, were the equitable rights, if any, acquired under it by the purchaser? This question has been fully settled by our past decisions. Where land of a decedent is sold by the Probate Court for the payment of debts, or for distribution, and the proceeding is void for want of jurisdiction, or otherwise, and the purchase money, being paid to the administrator, is applied by him to the payment of the debts of the decedent's estate, or is distributed to the heirs, while the sale is so far void as to convey no title at law, the purchaser nevertheless acquires an equitable title to the lands, which will be recognized in a court of equity. And he may resort to a court of equity to compel the heirs of a devisee to elect a ratification or rescission of the contract of purchase. It is deemed unconscionable that the heirs or devisees should reap the fruits of the purchaser's payment of money appropriated to the discharge of debts, which were a charge upon the lands, and at the same time recover the lands. They are estopped to deny the validity of the sale, and at the same time enjoy the benefits derived from the appropriation of the purchase money. And this principle applies to minors as well as to

adults. Bland v. Bowie, 53 Ala., 152; Bell v. Craig, 52 Id., 215; Robertson v. Bradford, 73 Id., 116.   See also Ganey v. Sikes, 76 Id., 421."

. In the case of Ryan v. Maxey, 43 Texas, 195, Mariah Fulton, a minor, died.   There was no administration on her estate, but her former guardian, at the instance of the heirs (who were themselves married sisters and an infant brother) obtained from the Probate Court an order of sale of enough of the property of the decedent to pay the debts, and under this sale the appellee Maxey held.   The heirs subsequently brought suit for the land.   The Supreme Court said:   "Whether the court in this case had or had not jurisdiction to order the sale, under the facts set up in the answer and established by the evidence, the plaintiffs were estopped from enforcing their claim to the land.   By their agency and procurement the order was made, the object being to raise funds to pay debts which were a charge on the estate.   The proceeds were applied to their benefit, and, as the result, they received the remaining part of the estate free from incumbrance.   The evidence is satisfactory that the parties were not merely passively consenting to the sale, but that they were active agents in procuring it to be ordered.·   In truth, the court and the guardian may be regarded as their agents in making the sale.   The purchaser was justified in relying on these acts as authorizing the sale.   The case is quite similar to that of Grande v. Chaves, 15 Texas, 550, where, though the administration. was held void, a sale made by the administrator was held valid as against the heirs who had urged it and who had received the proceeds.   The court says:   'Their acts show such acquiescence as to amount to a ratification, and they can not be permitted to disturb the rights of purchasers under sales freely made and with their consent, and from which they have received the benefit.'

"At the time the order and sale were made, Hugh Fulton was represented by his guardian, and was bound by his assent and acts.   Dancy v. Strickling, 15 Texas, 559.   The record discloses no proffer on his part since he has become of age to release the benefits he received from the sale.

"Two of the heirs were at that time married women.   One of these united with her husband in making the application to the court, and the other, with her husband, voluntarily became a party to the proceeding, and agreed to the order.   To hold that they were not estopped would be to allow them to perpetrate a fraud."   See, also, Dalton v. Rust, 22 Texas, 155; Halbert v. Carroll, decided by this court at its last. term; Sanders v. Howard, 51 Texas, 23; Walker v. Lawler, 45 Texas, 532; Grande v. Chaves, 15 Texas, 554; Freeman on Void Judicial Sales, sec. 50; Lindsay v. Cooper, 94 Ala., 170; 33 Am. St. Rep., 105, note and authorities, p. 118.

, But, it is not necessary to rest the decision of this case upon the ground of legal estoppel, a field which has been fought over so often in this State, and in which the decisions are not yet fully harmonious.   Here, the heirs took no active part in procuring the sale, but after it was made, they voluntarily became parties in the Probate Court to the

proceedings on final settlement and distribution of the estate, and not only received the greater part of the purchase money of the land, but also received the unsold land which would have been subject to sale for the payment of the debts, if they had not been settled out of this purchase money. The Probate Court had full jurisdiction of the parties and subject matter in the final settlement and distribution of the estate, and appellants were all properly parties to that proceeding.

The case is presented to us in a double aspect. If we consider that the certiorari brings in review that proceeding, and this court should be placed in the attitude of the trial court, with the heirs before it, asking that the sale be set aside because it was erroneously made, would such an order be granted where the heirs have received the proceeds of the sale, besides all the other assets, and fail or refuse to restore them to the custody of the court, so that full justice may be done? The suit as presented in the attitude of a claim by the heirs under a legal title, which has not been divested, presents a more embarrassing question. In the one case the heirs must bring themselves within the rules of equity; in the other, the defendants must present some ground upon which to resist the legal title under which the heirs claim.

The heirs as plaintiffs below, treating the sale as void, had a right to bring their suit relying strictly upon their legal title; but when the defendants in their special answer set up the proceedings on final settlement in the Probate Court in which the plaintiffs had participated, receiving the purchase money and the remaining assets, it then became necessary for them to restore or offer to restore what they had received, before a judgment could be rendered in their favor. In some cases, the court itself, where the proper offers were made by the plaintiffs to do equity, has rendered judgments in their favor for the recovery of the land upon their making proper restitution within a reasonable time, fixed by the court. But in no case, under such circumstances, would a court of equity or a court under a system of mixed equity and common law jurisdiction, like ours, authorize a recovery of the land while the plaintiffs hold on to the proceeds of its sale. Here, the plaintiffs have appropriated not only the greater part of the proceeds of the sale, but also the three-acre tract of land which was subject to the payment of the debts, and which would have been almost sufficient to liquidate them.

The principle involved in the case of Railway v. Blakeney, 73 Texas, 180, is involved here. There the railway company, in condemning its right of way, did not make the minor heirs, in whom the legal title was vested, parties to the suit, but proceeded against the administrator, and paid the money which was used in the settlement of incumbrances against the minors' property. The guardian of the minors brought suit to recover the land taken, on the ground that the minors not being parties to the condemnation proceeding, it was void as to them. Judge Gaines said: "It is assigned that the court erred in giving judgment for plaintiffs without requiring them to refund the defendant the money

paid by it on their property. It must be conceded that as a general rule one can acquire no right against another by the voluntary payment of the latter's debt. But to this there are exceptions. When a debtor's property is subject to be lawfully sold under judicial process, and it is sold in an illegal manner, the sale may be held void. Yet if the debtor sue to recover the property, he can only succeed by proffering to pay the purchase money which has gone to extinguish his debt.

"This principle was distinctly announced in Howard v. North, 5 Texas, 290, and has been recognized and followed in many subsequent cases. Horan v. Wahrenberger, 9 Texas, 313; Bailey v. White, 13 Texas, 114; Teas v. McDonald, Id., 349; Sydnor v. Roberts, Id., 598; Brown v. Lane, 19 Texas, 203; Andrews v. Richardson, 21 Texas, 287; Morton v. Wellborn, Id., 772; Johnson v. Caldwell, 38 Texas, 218; Stone v. Darnell, 25 Texas Supp., 435; Burns v. Ledbetter, 56 Texas, 282; Walker v. Lawler, 45 Texas, 538; Mays v. Blanton, 67 Texas, 245.

"It may be that the purchaser is not entitled to affirmative relief and to bring his action to recover the money paid by him, but he, in our courts, is permitted to defend a suit for the recovery of the property to the extent of demanding that his money shall be refunded as a condition of the plaintiff's recovery. There is no difficulty in applying the rule in equity. A party asking the aid of that court is always required to do equity. There is more difficulty in holding that the defense may be interposed to an action of trespass to try title, based upon the legal title. The plaintiff in such a suit asks no equity. Nevertheless, our courts are courts of equity as well as of law, and no reason is seen why, as a matter of substantial justice, the defense should not avail as well against a suit supported by a legal title as against one which calls for the exercise of the powers of a court of equity in order to obtain the relief sought.

"In the leading case cited (Howard v. North), the plaintiff sued to recover land which had been sold at a sheriff's sale; the sale was held absolutely void, and yet the purchaser was held entitled to have his money refunded as a condition to a recovery of the land.

"We think the same principle should be applied to the case before us. The defendant under its charter had the right to condemn the land for its right of way. It sought to exercise that right in the manner pointed out by the statute. The land belonged to the estate of a deceased person. The administratrix was made a party to the proceedings, but the plaintiffs, the holders of the legal title, were not. It would seem that they were not bound unless they were made parties, and that the proceedings were void as to them. Mills on Em. Dom., sec. 67. The damages were paid to the administratrix, who, in the performance of her duty, applied the money to the discharge of valid liens against property of the estate which belonged to the plaintiffs. It would be against the manifest justice and equity of the case to permit them to recover the land without refunding the money of which they have had the benefit. When the defendant pleaded the

facts they should have made an offer to refund.  Having failed to do this, upon proof of the facts alleged in the answer, the court should have given judgment for the defendant."

The same equitable rule is laid down in the case of Harrison v. Ilger, 74 Texas, 86.  There the sale of property of infants was held to be invalid, but the money having been used in the payment of valid claims against their estates, it was held that they could not recover the property without a restoration of the purchase money.

We think that these cases present the true spirit of our law.  They open a wide door for the adjudication of the rights of infants and married women, in such cases, but do not lose sight of the fundamental principles of justice and equity, which, at last, are the only safe guides in judicial investigation.

The judgment is affirmed.

*Affirmed.*

Delivered September 21, 1895.