HOEFLING et al. v. THULEMEYER et al.†

(Court of Civil Appeals of Texas. San Antonio. Nov. 29, 1911. On Motion for Rehearing, Jan. 10, 1912.)

1. HOMESTEAD (§ 111*) — INCUMBRANCES — CONSTITUTIONAL AND STATUTORY PROVISIONS.

Under the express provisions of Const. 1876, art. 16, § 50, an instrument purporting to create a lien upon a homestead as security for money is void.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 111.*]

2. PARTITION (§ 12*) — HOMESTEAD—CONSTITUTIONAL AND STATUTORY PROVISIONS.

Under the express provisions of Const. 1876, art. 16, § 52, relating to the descent of homestead, Rev. St. 1895, art. 2046, providing for the setting apart of a homestead, and article 2057, relating to partition of homestead, a homestead cannot be partitioned among the heirs of the deceased during the life of the widow or so long as she may elect to use or occupy the homestead as such.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 12.*]

3. HOMESTEAD (§ 145*)—DESCENT—ABANDONMENT—SUFFICIENCY OF EVIDENCE.

Evidence, in an action to establish interests in homestead property, held sufficient to sustain a finding that the homestead had been abandoned.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 145.*]

4. HOMESTEAD (§ 145*)—DESCENT—ABANDONMENT—REMOVAL—INTENT.

Where a surviving wife, entitled to a homestead, removed from the state and lived elsewhere with no fixed, definite intention of returning, she thereby abandoned the homestead.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 145.*]

5. HOMESTEAD (§ 124*)—ABANDONMENT—EFFECT ON LIENS.

A lien, void as against a homestead under the express provisions of Const. art. 16, §

---

50, does not become valid and attach upon an abandonment of the homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 218, 219; Dec. Dig. § 124.*]

6. HOMESTEAD (§ 153*) — CONSTITUTIONAL AND STATUTORY PROVISIONS — RIGHT OF SURVIVING WIFE AND HEIRS.

Const. 1876, art. 16, § 52, provides that, on the death of the husband or wife, a homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor occupies it as a homestead. Rev. St. 1895, art. 2046, provides that the probate court shall set apart for the benefit of the widow and minor children the exempt property designated in the Constitution. Article 2054 provides that on final settlement of an insolvent estate the property other than the homestead shall be distributed among the heirs. Article 2055 declares that, on the final settlement of an insolvent estate, the title of the widow and children to all the property set apart as a homestead shall be absolute and not taken for debts of the estate except in certain cases. Held, that the provisions related only to the rights as between heirs, and not to the rights of creditors, and operated to remove the homestead from the assets of the estate and set it apart to the surviving wife and children, and that, though abandoned as a homestead, it could never be subjected to the debts of creditors, whether the estate was solvent or insolvent.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 306; Dec. Dig. § 153.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Suit for partition by L. Thulemeyer against Dorothea Hoefling, Mary Hoefling, and others, with cross-action by Mary Hoefling. Decree for distribution to the plaintiff and others, after payment of the claim of Mary Hoefling, and Dorothea Hoefling and others appeal. Decree reversed as to Mary Hoefling, and ordered that she take nothing by her cross-action, and that the land be partitioned among plaintiff and others.

Frank J. Bosshardt and R. P. Ingrum, for appellants. Henry E. Vernor, Clark & Bliss, and Denman, Franklin & McGown, for appellees.

FLY, J. This is a suit for partition, and was instituted by L. Thulemeyer against Dorothea Hoefling, a widow, Mary Hoefling, a widow, Rudolph Hoefling, Emma Wolfe and her husband, Bert V. Wolfe, W. R. Hoefling, Daisy Hoefling, G. A. Hoefling, and Willie Hoefling, alleging that he and the named defendants were the joint owners of lot No. 9, in block 16, city block 432, in the city of San Antonio, of the estimated value of $5,000; that the plaintiff owned an undivided one-eighth interest in the property; that Dorothea Hoefling owned one-half of the property; that Rudolph Hoefling and Emma Wolfe each owned an eighth interest; that W. R. Hoefling, Daisy Hoefling, G. A. Hoefling, and Willie Hoefling each owned a

thirty-second undivided interest; that the last two named were minors without a guardian and were the children of Mary Hoefling, who had no interest in the land, but was claiming to have. It was further alleged that Mrs. Dorothea Hoefling had been collecting the rents on the property for a number of years and should account for the same, and that the property was incapable of partition, and it became necessary that it should be sold and the proceeds divided.

Mrs. Mary Hoefling answered: That she was the surviving widow of William Hoefling, Jr., a son of William Hoefling, Sr., and Dorothea Hoefling. That the property in controversy was the community property of said William Hoefling, Sr., and Dorothea Hoefling. That in 1895 William Hoefling, Jr., died leaving the said Mary Hoefling and his children, W. R. Daisy, G. A., and Willie, surviving him. That prior to his death her husband had insured his life for her benefit in the sum of $3,500, and after his death she loaned the money arising from the policy to William Hoefling, Sr., for five years at 8 per cent. interest per annum, and he promised her if he did not repay the money he would convey to her an interest in the community estate. That Dorothea Hoefling agreed to it, and they executed to her the following instrument: "Know all men by these presents that, whereas Mary Hoefling, widow of William Hoefling, Jr., deceased, has this day loaned to Wm. Hoefling the sum of $3,500.00 for which the said Hoefling has executed his promissory note due and payable on or before 5 years after date together with interest at the rate of 8 per cent. per annum payable monthly: Now, therefore, to further secure the payment of said note, and, in the event of failure to pay when due or in the event of the death of the said Wm. Hoefling, then in such events, the said Mary Hoefling shall have and we do hereby grant to her a $3,500 interest in our joint estate of which we may be possessed at such time, irrespective of her natural heirship or that of any others. In witness whereof we have hereunto signed our names this the 17th day of September, 1895. [Signed] Wm. Hoefling, Dorothea Hoefling." That a promissory note was also executed to her by said William Hoefling, Sr., and the money was used to pay community debts. That said William Hoefling, Sr., died in November, 1898, without repaying the money, and Dorothea Hoefling, after qualifying as administratrix of the estate, represented that there was ample property other than that in controversy to pay off her debt, and urged, persuaded, and induced her to prove up a claim for the $3,500 against the estate. That she transferred to Henry E. Vernor one-third of the claim, and that Vernor had transferred said interest in the claim to D. Sullivan & Co., a firm composed of D. Sullivan and W. C.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Sullivan. It was alleged that afterwards the administratrix had collected $1,580 for the estate and proposed to the said Mary Hoefling that, if she would allow the administratrix to keep $500 of the money, the latter would recognize an interest in the property in controversy to the extent of the balance of the claim of said Mary Hoefling, which offer was accepted, and that the said Mary Hoefling thereby became the owner of an undivided 121/370 interest in said property. That said property was set apart as a homestead to Dorothea Hoefling; no objection being made by Mary Hoefling because the former agreed that she would recognize the interest of the latter in the property. That the latter through her answer desired to sue all the other parties, and that "she recover against all the parties to this suit her said interest in the property in controversy in this suit." She further prayed: "But if the court should be of the opinion that this defendant is not entitled to recover of all the parties to this suit, the title and possession of the said interest in the property in controversy in this suit as hereinbefore alleged, then she prays that the court grant her such relief, both general and special, as she may be entitled to under the facts hereinbefore set forth."

D. Sullivan & Co. answered that Vernor had transferred a certain interest in the property to them, and further that "they adopt the answer of Mary Hoefling that H. E. Vernor filed herein May 16, 1910, and ask that it be made their answer in so far as applicable to issues between them and other parties herein." Vernor adopted the answer of Mary Hoefling, and asked that his interest in the property be awarded to D. Sullivan & Co.

Dorothea Hoefling, Emma Wolfe, Bert Wolfe, and Rudolph Hoefling filed a general demurrer to the petition and ten special exceptions to the answers of Mary Hoefling and Vernor, and answered that the claim of Mary Hoefling against the estate of William Hoefling, Sr., had been allowed as a claim of the third class, and that the claim and lien had been approved by the county judge and a decree entered to that effect; that thereby whatever claim Mary Hoefling had was merged into that judgment which was in full force and effect; that the property was not subject to partition because it was the homestead of Dorothea Hoefling, and had been so set apart to her by the county court, and the matter was res adjudicata.

Willie Hoefling answered through his guardian ad litem with exceptions, a general denial, and that he was entitled to 1/32 of the property.

The cause was tried by jury upon one special issue, that of homestead, and they found that the property had been abandoned as a homestead by Dorothea Hoefling, whereupon it was decreed by the court that the property be sold to pay the claim of Mary Hoefling

amounting to $5,712.45, and, if any balance remained after paying such claim, that one-half of it should be distributed to Dorothea Hoefling, to Rudolph Hoefling, L. Thulemeyer, and Emma Wolfe each one-eighth, and to Daisy Voight, W. R. Hoefling, G. A. Hoefling, and Willie Hoefling each 1/32 of such balance, and a lien was decreed in favor of Mary Hoefling on the property, that she owned two thirds of her claim and D. Sullivan & Company the other third. This appeal is prosecuted by Dorothea Hoefling, Emma Wolfe, Bert V. Wolfe, and Rudolph Hoefling as against all of the other parties.

[1] The property in question was the homestead of William Hoefling, Sr., and his wife, Dorothea Hoefling, at the time the instrument hereinbefore copied was executed and delivered to Mary Hoefling, and was set apart as a homestead to Dorothea Hoefling by the probate court. It was given as a security for a debt and is inhibited by the Constitution which provides: "No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void." Const. 1876, art. 16, § 50. That the instrument was intended as a lien to secure money is shown by its language, was so treated by the beneficiary of it when she proved her claim against the estate as one of the third class, and was so considered by the trial judge in the foreclosure of the lien against the property in controversy. It was not a sale of a part of the homestead, but, as is stated in the instrument, it was given "to further secure the payment of said note." In the judgment of the probate court the debt was recognized as a claim of the third class, and it was decreed: "And the lien given in the instrument evidencing the same, recorded in the records of Bexar county, Tex., Book vol. 174, pp. 363 and 364, deed of trusts, etc., is hereby foreclosed upon all the property of said estate of whatever kind or description and wherever the same may be situated or found." Although the lien was amplified and enlarged so as to embrace everything owned by the Hoefling estate, it will not be seriously contended that it attached at that time to the homestead.

[2] Upon the death of William Hoefling, Sr., one-half of the homestead descended to and vested in his children; but the homestead of the widow and children was not subject to partition among the heirs during her lifetime, or so long as she elected to use or occupy it as a homestead. Const. art. 16, § 52. By article 2046, Revised Statutes, it is provided that the probate court shall set apart for the benefit of the widow and minor

children the exempt property named in the Constitution, and in article 2057, Revised Statutes, is provided that "the homestead shall not be partitioned among the heirs of the deceased during the lifetime of the widow, or so long as she may elect to use or occupy the same as a homestead."

[3] The issue as to whether Dorothea Hoefling had abandoned the homestead was the only issue submitted to the jury, and an affirmative response was made to it by the jury. There is ample evidence to sustain the finding of the jury. Mrs. Dorothea Hoefling testified that she had been living in Washington, District of Columbia, for eight years with her daughter, Mrs. Wolfe. For two years she leased the house furnished, and then came to San Antonio, sold a part of the furniture, sent the other part to Washington, repaired the house, and rented it. After remaining three or four months in San Antonio she returned to Washington. As to her intention of returning to Texas, she said: "I had always in my mind to come back and take the house again if I could make my daughter come along with me. My daughter always said that we would come back to San Antonio and take the house ourselves, if my son-in-law could get a job here. * * * I said that when I went to Washington City to live with my daughter that I intended to come back to San Antonio whenever my son-in-law could get a job here." Mrs. Mary Hoefling swore that Mrs. Dorothea Hoefling told her, when she came back to Texas and sold the furniture, that: "She did not like Texas any more; she liked Washington a great deal better, and she was going to make her home there." Mrs. Henry Hoefling testified: "She (Dorothea Hoefling) said she was going to Washington a while until her health got better, and when her health got better she was going to come back and remain the latter part of her life in San Antonio." It will be noted that Dorothea Hoefling conditioned her return on the contingency of her son-in-law getting "a job" in San Antonio, while Mrs. Henry Hoefling states she based her intention to return on the state of her health. There was a conflict in the evidence as to the intention to return, which raised a question for a jury. Craddock v. Edwards, 81 Tex. 609, 17 S. W. 228; Cline v. Upton, 56 Tex. 319.

[4] The removal from Texas and living in Washington with no fixed definite intention of returning was an abandonment of the homestead. As is said in McElroy v. McGoffin, 68 Tex. 208, 4 S. W. 547: "Her removal from the state is inconsistent with any right remaining to her former homestead, and effectually precludes her from afterwards asserting such right." See, also, Jordan v. Godman, 19 Tex. 273; Woolfolk v. Ricketts, 48 Tex. 28; Smith v. Uzzell, 56 Tex. 315.

[5] Up to the time of the abandonment of the homestead by Dorothea Hoefling, the lien evidenced by the instrument of writing given to Mary Hoefling, and which was merged into the judgment of the probate court, could not possibly have attached to the homestead, and there was no lien upon the homestead unless it attached thereto upon its abandonment. It is the contention of appellees Mary Hoefling and Henry E. Vernor that, "though the property in controversy in this suit was duly set aside to Dorothea Hoefling, the widow of Wm. Hoefling, Sr., as a homestead by the probate court of Bexar county, yet, when she left the state of Texas and went to the District of Columbia to reside with her daughter with no intention to return to Texas to reside, she lost her homestead right in said property, and it became subject to partition and to the payment of the community debts of her and her husband." This court can subscribe to the whole of that proposition with the exception of that embodied in the statement that after abandonment of the homestead under the circumstances of this case, a debt and lien, that were invalid as against the homestead when the debt was made and the lien attempted to be given, became active when the abandonment of the homestead took place. The Constitution states that "no mortgages, trust deed or other lien on the homestead shall ever be valid," and in the graphic diction of Judge Sawnie Robertson, in construing that language: "What cannot 'ever be valid' is never valid, and what is never valid is always void." In the same connection it was said: "We are of opinion that the clause quoted from the Constitution of 1876 renders all liens upon the homestead, not expressly excepted, absolutely void, and that they are not vitalized by the divestiture of the homestead character."

When William Hoefling, Sr., died, the homestead descended and vested in his widow and children, free from any claims of any kind against his estate. It passed forever beyond the reach of creditors, and the loss of its homestead character could not instill life into an invalid lien, whether the same was evidenced by mortgage or other instrument or by a judgment. Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; Lacy v. Lockett, 82 Tex. 190, 17 S. W. 916. It is provided in article 2055, Revised Statutes: "Should the estate upon final settlement prove to be insolvent, the title of the widow and children to all the property and allowances set apart or paid to them, under the provisions of this and the preceding chapter, shall be absolute and shall not be taken for any of the debts of the estate except as hereinafter provided." It was the intention of the Legislature, through that statute, to deprive all heirs not forming constituent parts of the homestead family of their rights therein, and in so far as it attempted to do so it was held void as being in conflict with article 16, § 52, of the state Constitution, which provides for the descent

of the homestead upon the death of the husband or wife, or both. Otherwise the statute was held to be valid. It would seem that it was the intention of the Legislature to give the homestead absolutely to the widow and children, and that the other heirs should not have any ultimate interest in it if the estate on final settlement was insolvent, as distinguished from article 2054, wherein it was provided that the estate, other than the homestead, should be distributed among the heirs. It was not the object or aim of the statute to provide for the ultimate fate of the homestead . as between the heirs and creditors, but only as between the heirs themselves. The descent of the homestead had been prescribed by the Constitution, had been protected forever from creditors, and its protection did not rest upon the solvency or insolvency of the estate. The object in view in the passage of the two articles was to fix the status of the homestead as between the heirs, in both solvent and insolvent estates; "only that and nothing more." The Supreme Court, in the case of Ford v. Sims, 93 Tex. 586, 57 S. W. 20, seems to so construe the statute in question, in connection with section 52, for it is said therein: "Under the law existing prior to the adoption of the Constitution, the homestead of an insolvent was required to be set aside to the widow and minor children of the deceased and became their property, free from the claims of adult heirs. To remedy this, section 52 was adopted, which changed the rule so that the homestead, whether the estate be solvent or insolvent, should descend to all of the heirs according to law. It was not intended by that section to regulate the rights of creditors and heirs; the language relates alone to rights of the heirs and the husband and wife, as between themselves, to the homestead property upon the death of either spouse." The court then quotes, with approval, from the case of Zwernemann v. Von Rosenberg, 76 Tex. 525, 13 S. W. 486, the following language bearing on the subject under consideration in this case: "It is clear that it was not intended to determine the disposition of the homestead after the death of the owner as between his heirs and his creditors further than to designate it as a home for the surviving husband or wife and for the minor children under the prescribed limitations. In the previous Constitutions of this state, the disposition of the homestead was left wholly to the wisdom of the Legislature. It is so also in the present Constitution, except as to the manner of its descent and the use reserved to the surviving spouse and minor children. The language, 'shall descend and vest as other property of the deceased,' was employed, we think, to determine the persons who should take and their respective interests, but not the conditions which were to be imposed upon the inheritance. It was not, in our opinion, intended that the homestead should descend charged with the payment of debts as other property." "But," says the Supreme Court, in Ford v. Sims, "the section has no reference to the rights of creditors and heirs. It was merely intended to abrogate the statute which gave the homestead absolutely to the widow and minor children, ·and to secure to the adult heirs their rights in the property after the use of it as a homestead had ceased."

If article 16, § 52, of the present Constitution, is properly construed in those decisions —and there is no room for doubt that it is —then any statute that would seek to make a difference as to the ultimate fate of a homestead in solvent and insolvent estates would be invalid, and the section in question has made none. The property that was homestead before the death of one or both of the spouses is made a homestead after the death, regardless of the financial condition of the estate, and all the Legislature had in view in passing article 2055 was to make the homestead of an estate, found to be insolvent upon final settlement, the absolute property of the widow and minor children, and which could never be subject to partition so far as the other heirs were concerned. It was an attempt to protect the widow and children at the expense of the other heirs.

As hereinbefore stated, that attempt upon the part of the Legislature is held to be null and void in a number of cases. After so declaring it was, in the case of Lacy v. Lockett, hereinbefore cited, and that the balance of the law was operative, it was said: "As construed in the opinion of the majority of the court in the foregoing cases, this provision of law has the effect of removing the property set apart to the surviving wife from the assets of the estate of the decedent, and of permanently protecting the property from the claims of creditors."

In the case of Roots v. Robinson, 93 Tex. 365, 55 S. W. 308, the rule, as to the status of the homestead, that remains a homestead after the death of one or both of the marital partners, is clearly fixed. The Supreme Court, after reviewing articles 2046 and 2055, and the cases of Givens v. Hudson, 64 Tex. 473, and. Zwernemann v. Von Rosenberg, clearly states the law upon the subject as follows: "Upon the death of one who was the head of a family, leaving a widow and minor children, or either, it is made the duty of the county court to set aside the homestead and other exempted property to such widow and minor children who would be entitled to the use of the homestead under the limitations of section 52, art. 16, of the Constitution; but the title to the property would vest in all the heirs, not however, subject to the debts of the deceased, because, being set apart by the court, it is withdrawn from the administration of his estate and would not afterwards become sub-

ject to the payment of debts, if not used as a homestead, because the exemption by law attaches after death in favor of the persons named."

Article 2055 is construed in the case of Dorman v. Grace (Tex. Civ. App.) 122 S. W. 401, and a writ of error was denied by the Supreme Court. The Court of Civil Appeals said: "It will be observed that the question is not whether the homestead remains exempt upon the death of the head of the family leaving no constituents of the family authorized under the law to have it set apart to them, but whether, after the death of the only remaining constituent to whom it had been set apart, it becomes assets in the hands of the administrator and subject to the debts of the deceased husband." The court then reviewed articles 2046, 2055, and 2060 of the Revised Statutes and said: "From the foregoing provisions, it is made clear, we think, that, upon the death of the husband leaving a wife or any constituents of the family mentioned in the statute who are authorized to claim the homestead exemption, the latter is not subject to the payment of the deceased husband's debts, and therefore is no part of the assets to be administered. * * * The effect of the statute is to completely withdraw the homestead under the condition described from administration, and to exclude it from the assets of the estate available for the payment of the debts of the deceased. This being done, there is no other provision of the statute that attempts to restore it at any future time or upon the happening of any future contingency. If the exemption was intended to last only so long as the statutory constituents of the family lived or used it in the manner required by law, there could be no good reason that it should not be applied during that time to the debts of the husband, subject to the possessory and other rights of those surviving constituents." In that case article 2055 is discussed, and it is held that it merely attempted in cases of insolvent estates to make the title of the surviving wife and minor children to the homestead absolute to the exclusion of other heirs, and that the same had been declared unconstitutional and void in that respect.

The Constitution protects the homestead during the life of the husband and wife, and provides that it "shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution." That language is construed, as in other cases hereinbefore indicated, in the case of Childers v. Henderson, 76 Tex. 664, 13 S. W. 481, and it is held that by the language, "shall descend and vest like other property," does not indicate that the homestead was subject to administration in favor of creditors, but was merely a declaration of the ultimate

rights of heirs and not of creditors. It is further held: "Subject to the manner of its final partition and its use until then, its status with regard to creditors was left, as it always had been, to the Legislature. When upon the death of the owner of the homestead, no constituent of the family survives, and as a consequence there remains no family, the exemption ceases, and the homestead becomes subject like other real estate to be sold for the payment of debts." Givens v. Hudson, 64 Tex. 471. But if upon the death of the owner any constituent of the family survives so that the family continues to be represented, then the homestead, subject to the prior right of occupancy of such as are protected in remaining, descends and vests in the heirs of the owners."

[6] In the light of the Constitution, statutes, and decisions of Texas, we hold that the homestead of William Hoefling, Sr., and his wife, Dorothea Hoefling, descended to his wife and children, never to become subject to the debts of his creditors, whether his estate was insolvent or solvent. It is true that in most of the cases bearing on the issue the estates were insolvent, but that undoubtedly arises from the fact that, in the case of a solvent estate—that is, an estate that has sufficient assets, independent of the homestead and other exemptions, to pay its debts—such an issue could not arise. But in none of the decisions is the ultimate right of the heirs to the homestead made to depend on whether the estate was solvent or insolvent.

While we are satisfied of the correctness of the holding of this court, which is made in response to the contentions of appellees, yet in this case the evidence is ample to show that the estate was insolvent. If this were not true, Mrs. Mary Hoefling could, and doubtless would, long since have collected her money, especially as by her judgment she was given a lien on all the property of the estate. Mrs. Dorothea Hoefling swore that there were only two pieces of real estate, one of them the homestead, and the other on which Mrs. Kampmann had a lien, and that there was no personal property appears from the fact that the only way in which the administratrix got any money was through a compromise as to the property covered by the Kampmann lien, and two-thirds of that was appropriated by Mrs. Mary Hoefling. In the compromise with the Kampmann estate, the administratrix of the estate of William Hoefling, Sr., received $1,600, the Kampmann estate got the only real estate, except the homestead, owned by the Hoefling estate, and Mrs. Mary Hoefling received $1,080 as a payment on her claim. All of the circumstances tend to show that the estate was insolvent.

It is the order of this court that the judgment in favor of Mrs. Mary Hoefling be

reversed, and that she take nothing by her cross-action, that the property be partitioned so as to give Mrs. Dorothea Hoefling one-half of it, the balance to be divided among the heirs and L. Thulemeyer, who bought an heir's interest, in proportions indicated by the court; and the cause is remanded in order that the property be sold as decreed by the trial court and the proceeds therefrom be divided among Mrs. Dorothea Hoefling, the heirs, and Thulemeyer according to their respective shares.

### On Motion for Rehearing.

It is contended by counsel for Mrs. Mary Hoefling that this court has not thoroughly considered the cases of Moore v. Moore, 89 Tex. 29, 33 S. W. 217, Ashe v. Yungst, 65 Tex. 631, and Blinn v. McDonald, 92 Tex. 604, 46 S. W. 787, 48 S. W. 571, 50 S. W. 931; but those cases were carefully considered by this court, and not one word is found in either of them to sustain the proposition "that, upon the abandonment by Dorothea Hoefling of the property in controversy for the purposes of a home, it ceased to be a homestead and became subject to the general lien given by law upon the property of a decedent to creditors of such decedent to secure their claims in accordance with the statute law of this state," as asserted by appellee Mary Hoefling in her motion for rehearing. In the case of Ashe v. Yungst the Supreme Court merely held that the duly qualified survivor has the power to sell the homestead to pay community debts, a very different question from the one involved in this suit. In the case of Moore v. Moore the only question involved as to a homestead was as to its being subject to partition. It has no application whatever to the facts of this case. And in the case of Blinn v. McDonald the question of homestead is not adverted to in any manner, shape, or form.

It may be, as stated by appellees Mary Hoefling and Henry E. Vernor, that they do not claim that the lien given on the homestead by Mary Hoefling assumed vitality when the homestead was abandoned; but they are in no better position when they claim that a creditor's lien, which had not attached to the homestead before, arose when the abandonment took place. That proposition is in the face of the holding by the Supreme Court that the setting aside of property as a homestead "has the effect of removing the property set apart to the surviving wife from the assets of the estate of the decedent, and by *permanently* protecting the property from the claims of the creditors." Lacy v. Lockett, 82 Tex. 190.† In the case of Stephenson v. Marsalis, 11 Tex. Civ. App. 162, 33 S. W. 383, it was held: "Ordinarily the property of a party,

at his death, descends to his heirs, subject to the payment of the debts of such decedent; but the homestead, which is exempt from the payment of debts, if a constituent of the family remains, descends and becomes vested absolutely in the heirs, and is not assets in the hands of the administrator subject to the payment of debts."

The question of solvency or insolvency of the estate, under our view of the law, should have no consideration in the decision of this case, for; whether solvent or insolvent, at the death of William Hoefling the homestead descended to his widow and heirs absolutely and permanently free of any liens, equitable or otherwise, of creditors. But we still hold, however, that the evidence showed that the only assets of the estate consisted of a parcel of real estate on Avenue C, claimed by Kampmann, out of which about $1,600 was realized, and out of which sum $1,080 was paid to Mary Hoefling on her claim. The remainder of the $1,600 was paid to Dorothea Hoefling, as part of the widow's allowance. Dorothea Hoefling, testified: "After my husband's death I had to earn a living. There has nothing ever been paid to me out of the estate except what came out of the Avenue C property. It was paid to me as the widow's allowance. The court granted me widow's allowance. After my husband's death, I had no other income except this property, and all I got out of the estate was the $600 allowance that was paid out of the Avenue C property. Prior to that I had received nothing out of the estate. Outside of the Avenue C property there was no other real estate belonging to the estate." There were numerous debts, some of which Dorothea Hoefling paid out of insurance money which belonged to her separate estate. These facts were not controverted and clearly indicate the insolvency of the estate.

The motion for rehearing is overruled.